## STATE v. SUMMER.

1. A REASONABLE DOUBT is a strong doubt, based on the testimony.
2. MURDER—MANSLAUGHTER—CRIMINAL LAW.—Distinction between murder and manslaughter properly defined.
3. MANSLAUGHTER—CHARGE.—In instructing the jury upon principles of manslaughter, Judge does not give to the jury his impressions of the testimony, by saying in his definition, "because some people don't cool, and some people don't want to cool."
4. SELF-DEFENSE—IBID.—The doctrine of self-defense is, "if there is any reasonable, safe way of escape, a man must do it, and not take the life of his fellow-man."
5. CHARGE.—It is not error for Judge in his charge to refer to issues as gathered from indictment and arguments.
6. PRACTICE.—A WITNESS having been improperly called and sworn, may upon objection then interposed be taken from the stand.
7. EVIDENCE—CROSS-EXAMINATION—COLLATERAL ISSUE—CONTRADICTION.—A WITNESS cannot be contradicted on a collateral issue brought out on cross-examination.
8. IBID.—SURREBUTTAL—PRACTICE—DISCRETION.—Testimony in surrebuttal attacking the character of a witness, who testifies for plaintiff in reply for first time on issue in the case, is within discretion of trial Judge, and his disallowance thereof is not reversible error. . MR. JUSTICE POPE *dissents.*

Before TOWNSEND, J., Lexington, February, 1898. Affirmed.

Indictment against Charles C. Summer for murder. From verdict and sentence, defendant appeals. .

*Messrs. Johnstone* and *Welch & Wingard,* for appellant, cite: *As to right to raise objection to a witness:* 12 S. C., 89.

*Mr. Solicitor Thurmond,* contra, cites: *As to examination of witnesses:* 5 Strob., 36; 4 Rich., 463; 29 S. C., 231.

*Messrs. Efird & Dreher,* also contra, cite: *Reasonable doubt:* 30 S.C., 441; 32 S. C., 392. *Self-defense:* 13 S. C., 464. *As to charge excepted to as on facts:* 51 S. C., 235; 48 S. C., 253. *Time of swearing witness within discretion*

*of Court:* 2 N. & McC., 331; 16 S. C., 378; 22 S. C., 560. *Witness cannot be contradicted by contra statement in sur-reply:* 29 S. C., 201. *Question not propounded:* 51 S. C., 379; 52 S. C., 320.

April 18, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. The defendant having been convicted of murder, with a recommendation to mercy, and having been duly sentenced, now appeals from the judgment of the Court. We will now pass upon these grounds of appeal, eleven in number, in their order:

"I. Because his Honor, the presiding Judge, erred in charging the jury as follows: 'A reasonable doubt is a strong doubt based on the testimony.'" The language of the presiding Judge in this connection was: "The State is bound to make out its case beyond a reasonable doubt; that is, before you can convict, you must be satisfied beyond a reasonable doubt that the defendant is guilty; beyond a reasonable doubt—remember the words. If there is a reasonable doubt in the mind of any juror, you cannot convict; that is the rule that governs the State. A reasonable doubt is a strong doubt based on the testimony, not on some imaginary matter outside." This Court, in the case of *The State* v. *Coleman,* 20 S. C., 455, used this language: "We know of no law or practice which would permit this Court to hold a Circuit Judge in error for charging a jury * * * or for instructing them that the phrase, 'a reasonable doubt,' used in the books, means a *'serious, well founded, substantial doubt.'*" And in the case of *The State* v. *Senn,* 32 S. C., at page 404, this Court said: "* * * it cannot be necessary to do more than repeat what this Court said in *The State* v. *Coleman* (20 S. C., 455), that we know of no law or practice which would permit us to hold a Circuit Judge in error for instructing a jury that the phrase 'reasonable doubt,' used in the books, means a serious, well founded, substantial doubt." Substitute the word "strong"

for that of "serious," and the cases are identical. This exception, upon the authority of the cases just cited, must be overruled.

"2d. Because the presiding Judge erred in charging the jury as follows: 'The law would say you cannot place your enemy, antagonist or fellow-being, can't surround him, with such circumstances which you know he would resent, and then mention it to him, bring it up to him to make him fight, just to get to kill him under circumstances which might appear to be sudden and unexpected; the law says you cannot do that.'" While the Circuit Judge was discussing the crime of manslaughter, after a very careful delineation of the principles of the law governing this phase of homicide, he rather by way of summing up the law, said: "You see, then, manslaughter is killing without malice; but if the killing was done under circumstances which showed that previous criminal intention existed to bring about the fight and to get to kill his assailant, the law would say that was murder, you brought that about," and then immediately follows the language embodied in this exception. And the charge of the Judge on this point has this language as a part of the paragraph of his charge set out in this exception: "If although the fight might be sudden, yet if it appears there was a predetermination on the part of the slayer to bring it about, then if he kills, it is murder and not manslaughter." The language of the charge sets forth sound, wholesome law so clearly that the jury was obliged to see its force, and, too, it was not subject to any legal objection by the defendant. This exception is overruled.

"3d. Because in charging the jury with respect to manslaughter as being a killing under sudden heat and passion, upon sufficient legal provocation and without time to cool, the presiding Judge in using this language, 'because some people don't cool, and some don't want to cool,' conveyed to the jury the impression made upon his Honor's mind by the testimony in the case, and thereby committed an error of law." We cannot agree with

the appellant in this exception to the charge of the presiding
Judge; the language set out in this exception is only a part
of what the Judge charged in this connection.  By refer-
ence to the charge we see the Judge was most earnestly
endeavoring to bring home to the minds of the jury what
manslaughter was.  Amongst other things he said: "Man-
slaughter is the unlawful killing of a human being in sudden
heat and passion upon sufficient legal provocation.  Suffi-
cient for what?  Sufficient to create that sudden heat and
passion, then you say to what extent does the sudden heat
and passion go?  It must go to that extent that the reason is
partially or entirely dethroned, the man is not himself, and
if he kills then, for that provocation and not for some past
provocation, if he slays his fellow-being just then for that
provocation, and not to punish him for something else gone
before, and while in that heat and passion, and before he
cooled or had time to cool, because some people don't cool
and some people don't want to cool; therefore, the law says
if there is legal provocation, and it is sufficient to create such
a great heat and passion that reason is partially or entirely
dethroned, the man is not himself, and he slays his fellow-
man before he cooled or had time to cool—and you must be
the judges of that—and for that provocation, then the law
says, 'I am so mindful of the weakness of human nature that
I will not call such killing as that murder, I will call it man-
slaughter.' "  We are unable to see how the language used
could prejudice the minds of the jurors against the prisoner.
The Constitution requires the Circuit Judge to declare the
law.  In doing so he cannot state the testimony.  The Cir-
cuit Judge did not mention, directly or indirectly, any part
of the testimony.  He has declared the law faithfully.  The
exception is overruled.

"4th.  Because the presiding Judge erred in charging the
jury as follows: 'If there is any reasonable, safe way to
escape, the law says he (the defendant) ought to do it, and
not take the life of his fellow-man.' "  The extract is part
of a paragraph of the charge.  The Circuit Judge

had analyzed the defense and showed in what it consisted.    Near the close of the analysis of the law, he said: "The right of self-defense is recognized by the law; a man's duty is to defend himself; and he is not bound to endanger himself by retreating, but if there is any reasonable safe way of escape, the law says he ought to do that, and not take the life of his fellow-man.    I don't mean by that he has got to go away from the place because his adversary is there—he is not bound to turn out of his way; but after the immediate conflict is commenced, it is his duty to retreat from it, avoid taking a man's life, to retire if he can do so safely, but not bound to do so otherwise, because he has the right to defend himself."    We must overrule this exception.    See *State* v. *Trammell*, 40 S. C., 331.

"5th. Because the presiding Judge erred in charging the jury upon the facts, as follows: 'You must consider that matter, consider the meeting of these parties,' thereby intimating to the jury the conclusion of his Honor that these parties did meet, and that a matter did take place between them."    In his charge to the jury, the presiding Judge did say: "You must consider the matter, consider the meeting of these parties.    It is claimed they met and had a fight; I cannot say they had a fight—I cannot say they had any trouble at all.    It is claimed by the State there was trouble—I gather from the argument and indictment there was trouble.    I cannot allude to the testimony. Now under what circumstances did they meet?"    We do not understand from the trend of the prosecution or defense, as developed in the "Case for Appeal," that there was any difficulty as to the time or place of the meeting of the accused and the deceased on the fateful Sunday afternoon when the tragedy occurred.    While the provision of the Constitution is mandatory upon Circuit Judges, wherein stating the testimony by them is forbidden, yet there must be some occasion for the provision of the Constitution to apply, before we can speak in condemnation.    Here the Circuit Judge disowns any reference to the testimony as the

basis of his remark to the jury which is complained of. On the contrary, he speaks of it as based upon the arguments and the indictment. If error, it was harmless. The fifth exception is overruled.

"6th. Because the presiding Judge erred in overruling the defendant's objection; and holding as competent and relevant the testimony of the witness, J. H. Shell, detailing certain declarations of the deceased, in regard to the fight, made in the absence of the defendant." This exception must be overruled, for it is founded on an unintentional oversight by the appellant of the testimony of the witness, Shell: "*Witness.* Mr. Murdock come to me and submitted himself." "*Mr. Johnstone.* In the absence of this defendant, it is not competent, cannot bind this defendant." "*Solicitor.* We are not proving statements; but we can prove whether he surrendered himself; and what—" "*The Court.* You can prove what he did, but not what he said." "*Witness.* He did surrender himself to me." The "Case" for appeal discloses that the counsel for the appellant had brought out in the cross-examination of this witness, Shell, that the deceased had had, on the day before he was killed, a difficulty with two brothers of the accused, and the witness, being the intendant of the town of Peak, where both difficulties took place, was questioned very closely as to his reasons for not arresting the deceased on Saturday, when the first difficulty took place. The solicitor was anxious, therefore, to show that Murdock, the deceased, one-half hour before he was killed, had surrendered himself to the intendant for the difficulty which had occurred on Saturday. We see no error here, and the exception is overruled.

We now come to the 7th, 8th, 9th, 10th exceptions, and we will consider them in a group. "7th. Because the presiding Judge erred in excluding the testimony of Mrs. Moss, offered by the defendant to impeach the character and credibility of certain witnesses in behalf of the State, who, for the first time, testified in reply. 8th. Because the presiding Judge erred in not ruling that the objection to the right to

introduce Mrs. Moss as a witness came too late, the objection not having been raised until after said witness had been offered for defense and accepted by the Court, sworn and partially examined. 9th. Because the presiding Judge erred in not ruling that the solicitor, in failing to raise the objection to the introduction of Mrs. Moss as a witness at the time this witness was offered by the defendant, and before she was sworn, had waived the right to object to the witness testifying. 10th. Because the presiding Judge erred in excluding Mrs. Moss as a witness after she had been sworn and partially examined." In order that we may understand how this matter covered by these exceptions arises, it will be better to copy herein what occurred in the Circuit Court when the question was presented. After the State closed its reply, the defense introduced and swore Mrs. Moss, when the following took place: "Mr. Johnstone: Mrs. Moss will please take the stand. Mrs. Moss, sworn, says: By Mr. Johnstone: You are the mother of Mrs. Murdock? A. Yes, sir. Q. Do you remember on one occasion when her child— Mr. Efird (interrupting) : You have no right to put up that witness. Mr. Johnstone: They waived that by not objecting before she was sworn. I had asked the question whether or not she was the mother of Mrs. Murdock, and she has answered it. The Court: I looked for objection to be made before she was sworn. Mr. Efird: They have no right to put up further testimony. Mr. Johnstone: That objection, if tenable, should have been made before the swearing of the witness; having sworn the witness, the only objection they can raise now is as to the legitimacy of the question. Mr. Efird: Our objection takes in the whole matter—the right to put the witness up and to the questions. Argued. During the argument Mr. Johnstone said: We wish to examine this witness as to the character and veracity of their witness, Willis M. Wilson, whom they introduced as a witness in this case for the first time in reply. Objection sustained. Exception noted." We would not like to commit the Court to the view embodied in the 8th

exception. No doubt the State's attorneys ought to have made their objection to the witness before she was sworn. Still, if the testimony of such witness from any legal cause was incompetent, the witness might be prevented from testifying. It is not uncommon for the testimony of a witness to be ordered struck from the stenographer's notes. If that be so, we cannot see why an error committed in allowing a witness to be sworn might not be corrected. And for the same reasoning we cannot sanction the 10th exception.

It remains for us to examine with some care the 7th exception, because it presents a nice question of law, and the practice of our Courts thereunder. In the appeal at bar, the "Case" discloses the fact that the defendant sought to justify the alleged killing by him of one Murdock, by showing by a number of witnesses that he was a violent, turbulent, ill-grained, dangerous man, and these facts were well known in the community in which he lived, and were well known by the defendant. Hence, when the State made reply, pains were taken to do away with the effect of the testimony of the defense on this point, not by attacking the general character of defendant's witnesses, but by having the wife of the deceased to testify as to the conduct of her husband towards herself, and also by having the witness, S. T. Swygert, who was re-examined, and the new witnesses, O. P. Clark, J. B. M. Stuck, and Willis M. Wilson, to testify to the general reputation for peace and order of Murdock, the deceased, in his lifetime. It will be seen, therefore, that the defendant never had any means of attacking the testimony of these new witnesses as to their general character. When the State announced that it had closed in reply, the defendant called a new witness, a Mrs. Moss, to the stand as a witness. She was sworn and was proceeding, we must assume, to contradict Mrs. Murdock's testimony as to the gentleness of her deceased husband to herself, when the objection was presented that the defendant had no right to introduce testimony in surrebuttal. Defendant's counsel

announced to his Honor, the Circuit Judge, that his purpose was to contradict the State's new witness, Willis M. Wilson, by proof of general bad character. The Circuit Judge denied the defendant the right to this testimony. There can be no doubt, under our decision of *Farr* v. *Thompson,* Cheves, 37; *Chapman* v. *Cooley,* 12 Rich., 654, and *The State* v. *Jones,* 29 S. C., 230, that in case the witnesses for the State or the plaintiff should be attacked by the defendant because wanting good general character, new testimony might be offered by the State in reply. But if the plaintiff, or the prosecution in a criminal case, sought in the reply to defendant's testimony to break down the general character of defendant's witnesses, that in such an event the defendant could introduce testimony to. rebut, or in surrebuttal, to speak more accurately. This position in the eye of the law is deemed but an act of duty owed to such witnesses so attacked. Not only so, but we find in the case of *McCoy* v. *Phillips,* 4 Rich., 464, this language in the report of the case by the Judge on Circuit: "After defendants had closed their testimony, plaintiff offered in evidence a grant of land, obtained since the commencement of the suit (not the range in dispute), to show that there was vacant on the swamp to that extent. The defendants objected to it, as not strictly in reply, but it was admitted; and the defendants were allowed and gave evidence in reply to it." On appeal, the ruling of the Circuit Judge was sustained. In the 8th vol. of Encyclopædia of Pleading and Practice, at page 133, it is said: "Evidence in surrebuttal.—The case at first made out by the plaintiff should apprise the defendant of the ground upon which the cause of action is finally to rest. Accordingly if the plaintiff in reply puts new matter in evidence, or makes a new case different from that at first made out, it becomes the right of the defendant to call witnesses in surrebuttal." See authorities cited in note 3 on page 133 of the same work—especially the case *Asay* v. *Hay,* 89 Pa. St., 77, where Trunkey, J., said: "After the defense closed, the plaintiff called Dr. Thomas Hay, who testified to the defendant's

admissions of indebtedness on the note in suit. That this testimony is pertinent and material, is conceded. The defendant offered to rebut it with his own testimony." The Court of last resort in Pennsylvania decided that the testimony of defendant should have been allowed, saying, among other things: "Had it been competent for the defendant to · prove in chief what he offered in rebuttal, the Court might have refused the re-examination of the witness. As to matters that require explanation or as to new matters introduced by the opposing interest, a party has a right, in rebuttal, to re-examine his witnesses." In the case at bar, Mrs. Murdock, and especially Wilson M. Wilson, were new witnesses introduced for the first time in reply. In a capital case, is it to be said ·that a defendant cannot attack the character for veracity of witnesses who may be swearing his life away *with perfect impunity?* If the reputation of a witness is so precious in the eyes of the law, that where he has testified for the defendant, and the State attempts to blacken or blast his general character, by testimony in reply, the law allows him, in surrebuttal, to introduce testimony in favor of his character, why does not the life or liberty of the defendant, when new witnesses for the first time offered *in reply,* appeal for, and demand, that the want of general character for uprightness shall be shown? We think the Circuit Judge erred here. Especially as his exclusion of the testimony was not based upon the exercise by him of discretion, but, on the contrary, the exclusion seemed to be made by the Circuit Judge upon the absence of power in him to admit it.

As to the 11th exception, it cannot prevail, for the reasons assigned in the review of the 8th exception. Therefore, in my opinion the judgment of this Court should be:

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and that the cause be remanded to the Circuit Court for a new trial. But the majority of the Court think otherwise. The judgment of the Court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES.    I concur in the opinion of the Chief Justice, that the judgment of the Circuit Court should be affirmed.

MR. JUSTICE GARY.    I dissent, and concur in the dissenting opinion of Mr. Chief Justice McIver.

MR. CHIEF JUSTICE McIVER, *dissenting.*    While I concur in all the conclusions reached by Mr. Justice Pope in his opinion, except the last, I cannot concur in that, as I do not think there was any error of law, on the part of the Circuit Judge, in excluding the testimony of Mrs. Moss offered by the defendant, after the State had closed its testimony in reply, for the purpose of impeaching "the character and credibility of certain witnesses," who had, for the first time, testified for the State in reply.    It seems that the defendant, in offering his testimony, introduced witnesses who impeached the character of the deceased for violence, and testified "as well to individual acts of violence, within their personal knowledge and the personal knowledge of the defendant, Charles C. Summer," and the State, in reply, offered five witnesses to rebut that testimony.    One of the witnesses offered by the State, in reply, was Willis M. Wilson, who testified only as to the good character of deceased.    Another witness was Mrs. Murdock, the wife of the deceased, who denied two acts of violence, which seems to have been charged as done or threatened to her personally by her husband—one a threat to slap her jaws and the other jerking her out of bed when her child was only four days old—and she also testified as to his general kind treatment of her.    Now the testimony of Mrs. Moss, which is here in question, was manifestly introduced for two purposes : 1st. To assail the credit of Mrs. Murdock by showing that her testimony, denying that her husband had jerked her out of bed when her child was only four days old, was not true.    2d. To impeach the general character of Willis M. Wilson, one of the five witnesses introduced by the State, in reply, to sustain the peaceable char-

acter of the deceased, which had been assailed by the testimony of the defense.

As to the first, it would have been clearly incompetent to receive the evidence of Mrs. Moss, at any time, to contradict Mrs. Murdock *as to a collateral issue,* brought out in her cross-examination. The rule upon this subject is thus stated in 10 Ency. of Plead. & Prac., 294-5: "The cross-examining party is concluded by the answer which a witness gives to a question concerning a collateral matter, and no contradiction will be allowed even for the purpose of impeaching the witness." This rule has been, in express terms, recognized in this State in the comparatively recent case of *State* v. *Wyse,* 33 S. C., at page 592-3, as based upon the authority of the standard text-writers on Evidence—Starkie, Philips and Greenleaf—and other authorities there cited. It is true that one exception to this rule is there recognized, which, however, has no application to the present case. Now, in this case, the issue which the jury were called upon to try was whether the defendant was guilty of the offense charged in the indictment, and not whether he had been guilty of brutal treatment of his wife; the latter issue was, therefore, clearly a collateral issue, and under the authorities above cited it was not competent to introduce testimony to contradict the testimony of Mrs. Murdock as to such collateral issue, brought out on her cross-examination.

As to the second purpose for which the testimony of Mrs. Moss was offered—to impeach the general character of the witness, Willis M. Wilson—it seems to me, that was a matter for the discretion of the Circuit Judge; and I see nothing whatever in the case to warrant the idea that such discretion was abused. In 8 Ency. of Plead. & Prac., 133-4, 1 find the following language: "And it is within the discretion of the Court to permit the introduction of evidence in surrebuttal where the plaintiff, in reply, has not transgressed the proper bounds of evidence in rebuttal, though in that case the privilege cannot be claimed as matter

of right." The same view is manifestly recognized in the case of *State* v. *Jones,* 29 S. C., at page 231, where it is said: "The true view is that, when the State or a plaintiff attacks the character of a witness for the defense, a new issue is then raised which could not have been before presented, and upon such new issue the defense has the right to offer testimony, as it could not before have been offered. It will not do to say, as has been said, that the view which we have taken, would lead to interminable protraction of the investigation, and the controversy might go on indefinitely; for it must be remembered that *the extent of the inquiry into character is sufficiently under the discretion of the Court to prevent the evil result apprehended"* (italics mine). While, therefore, there are certain rules regulating the time and manner in which testimony is to be introduced, yet, as was said in *State* v. *Clyburn,* 16 S. C., at page 378, upon the authority of the cases there cited: "The conduct of a case in the Circuit Court, so far as it relates to the time when testimony may be introduced, must be left to the discretion of the Circuit Judge, to be governed by the particular circumstances of each case." Now, when the Circuit Judge in this case found that the proposition was to impeach the general character of Wilson, who had testified solely as to the peaceable character of the deceased, he might very well have concluded that such a departure from the general rule was not only unwarranted by the particular circumstances of this case, but might lead to an indefinite protraction of an inquiry into character merely, and should not be permitted. At all events, I am unable to perceive any error of law in the ruling complained of. It seems to me, therefore, that the judgment of the Circuit Court should be affirmed.