[No. 1912, December 21, 1916.]

## STATE v. CHESHER.

### SYLLABUS BY THE COURT.

1.   The standard by which the jury must determine the reasonableness of belief of accused that dnager is so apparently imminent that he must act in self-defense is that of an ordinary person of firmness, reason, and prudence, not that such question should be determined from the standpoint of the accused; and instruction given by the court held proper.                                          P. 321

2.   Evidence of transaction occurring between appellant and deceased a few minutes previous to the act of homicide and closely connected therewith held improperly excluded.
P. 322

3.   Doctrine of "harmless error" held inapplicable.
P. 325

Appeal from District Court, Curry County; McClure, Judge.

Lem Chesher was convicted of voluntary manslaughter, and he appeals. Reversed and remanded.

State v. Cheser, 22 N. M. 319.

O. O. ASKREN of Roswell and PATTON & BRATTON and W. A. GILLENWATER, all of Clovis, for appellant.

F. W. CLANCY, Attorney General, and H. S. BOWMAN, Assistant Attorney General, for the State.

### OPINION OF THE COURT.

ROBERTS, C. J.—The appellant, Lem Chesher, was convicted of voluntary manslaughter in the district court of Curry county. From the judgment of the court sentencing him to serve a term in the state penitentiary, he appeals.

We deem that an extended statement of the facts of this case is unnecessary in view of the disposition we have determined to make of it. In brief, the evidence tends to show that appellant and Sam Byers, the deceased, prior to the day of the homicide, were not on friendly terms; that the two parties met on the streets of Texico on the day of the homicide, and after some conversation had passed between them they agreed to be friends, and in token of that agreement and fact repaired to a nearby saloon; that the parties became involved in a discussion or argument there, and that appellant fired three shots at and toward the deceased, one of which, at least, resulted in the death of deceased; that, according to the evidence of the state, deceased was unarmed at the time and made no hostile demonstration at or toward the appellant, but that, according to the evidence introduced in behalf of appellant, the deceased declared that if any one present did not like him or wanted to fight that was the time and place in which they could be accommodated, at which time deceased attempted to extract a pistol from his hip pocket, whereupon appellant fired the shots referred to; and that deceased actually did extract from his pocket a gun which dropped to the floor during the time the appellant was firing at him. This evidence is untrue according to the evidence introduced by the state and apparently believed by the jury. As this case must be reversed on one ground, we deem it advisable to consider only such other questions as we apprehend may occur upon the retrial of this case.

State v. Cheser, 22 N. M. 319.

[1] The foremost of such questions is whether to warrant action in self-defense, the situation and surrounding circumstances, as they appeared to the person asserting the right to act thereon, must have been such as would have excited the fear of death or great bodily harm of a reasonably cautious and courageous man, or a person of ordinary firmness, reason, and prudence; or is the question to be solved from the standpoint of the jury or from that of the defendant himself? The appellant contends that the standard of determining the reasonableness of the belief of the accused that the danger is so apparently imminent that he must act in self-defense is from the standpoint of the person, himself, rather than from that of a "reasonable man" or that of the jury who views the matter in the light of past events, whereas the state contends that the instruction, as given, is correct. It would serve no useful purpose, we believe, to discuss the merit or demerit of the three different rules applied by the courts except to say that the courts which follow the "reasonable person" view, so far as we have ascertained, do not mention the fact, which we judge to be of some importance, that ordinarily, we believe, the accused person at the trial would be deemed to be a reasonable man under the presumption of law, hence an instruction based upon the "reasonable man" view would consequently be correct as applied to any defendant, unless perchance the facts and circumstances surrounding the act of homicide would be such as to necessarily characterize the accused as other than such a person. We realize that there is much merit in the view that the standard is that of a reasonable man as well as the view that the standard is that of the person who asserted the right of self-defense. But after careful consideration we have deemed that the "reasonable man" view is the correct one and the prevailing one in this country. A full and complete discussion of the rule, together with cases supporting it, as well as the other two rules mentioned, will be found in 13 R. C. L. "Homicide," § 122; note to State v. Beckner, 3 L. R. A. (N. S.) 535; Wharton's Cr. L. (11th ed.) § 610 et seq.; State v. Gordon, 191 Mo. 114, 89 S. W. 1025,

109 Am. St. Rep. 790, note 804 et seq. See, also, State v. Summer, 55 S. C. 32, 32 S. E. 771, 74 Am. St. Rep. 707, note 717 et seq. Having arrived at such conclusion, it follows that the instruction referred to is not erroneous on the ground of attack made by appellant thereto.

[2] The case of the state began with a narration of the actual difficulty which occurred in the saloon after all the parties had repaired thereto for the purpose of indulging in liquor in token of the renewed friendship of the appellant and the deceased. The evidence of the state, however, tended to show that appellant and deceased had previous to that time been enemies, and that they had repaired to the saloon to drink in token of their reconciliation. The appellant, by way of defense, sought to show that he and deceased had a conversation on the streets of the town of Texico immediately preceding the time that he and deceased entered the saloon. Appellant offered to prove by three witnesses the following:

"We expect the testimony of this witness to be to the effect that at the time Sam Byers and Lem Chesher, Jr., were talking in the vacant lot south of the Deats saloon in the town of Texico, within five minutes of the time of the killing that this witness was standing on the sidewalk talking with the defendant, and that while they were talking the deceased motioned to the defendant to come out, and that the defendant requested this witness to go with him; that this witness did go with the defendant to the place where the deceased was standing, and that upon approaching the deceased the defendant said, 'Sam, I understand that you are up here to kill me,' and he said, 'Who in hell told you?' and the deceased says, 'I have word to that effect and have had a letter,' and that the defendant then said, 'Sam, you know you stood in with those fellows down there and had me indicted on a charge that wasn't true,' and the deceased said, 'I don't know a damn thing about it,' and the defendant then said, 'Sam, do you look me in the eye and tell me that you didn't have anything to do with that down there?' and he said, 'I do,' and the defendant then said, 'Sam, let's shake hands and be friends and go have a drink,' and that they did shake hands, and that this witness then said, 'I am glad that you men can settle your troubles this way,' and that the deceased and the defendant then turned and walked into the Deats saloon just before the killing, within perhaps five minutes before the homicide."

The trial court rejected this offer, although it permitted the appellant himself to narrate facts of substantially the same character, and also permitted the state, in rebuttal, to prove the conversation had between appellant and deceased just previous to their entrance into the saloon. The appellant contends that this evidence was relevant and material as a part of the whole transaction, and that the rejection of this offer was error, notwithstanding that the court permitted the appellant himself to testify with regard thereto. The Attorney General contends that this evidence was not a part of the res gestæ, but that if it was and was improperly rejected, that it constitutes harmless error in that the facts contained in the offer were placed before the jury by the testimony of the appellant. We regard the position of the appellant on this question as correct. It will be remembered that appellant and deceased, previous to the day of the homicide, had been very unfriendly—in fact had been enemies. They met in Texico, and after a conversation had between them repaired to the saloon, where the homicide occurred.

They went to the saloon as a direct result of the conversation they had just previous thereto on the outside of the saloon. The trial court apparently regarded the substance of this conversation as relevant in two instances, but rejected proof thereof when offered by witnesses other than the appellant and one for the state, The doctrine of res gestæ is one difficult of application, we admit, and one which may be differently applied by the most learned of courts. In the case of Wood v. State, 92 Ind. 269, 272, the court, among other things, has this to say:

"Where, however, the declarations are part of the quarrel which continues as one transaction until it culminates in a homicide, then the declaration made at any time during its progress and connected with it become part of the thing done, and as such competent evidence."

That the conversation of deceased and appellant had just immediately preceding their entrance into the saloon constituted a quarrel we have no doubt. The fact that

the parties agreed to be friends and pledge their friendship by indulging in liquor becomes immaterial in deciding this question. The quarrel between the parties commenced with their meeting in front of the saloon and ended with the death of the deceased, and this notwithstanding that there was an interval of time therein when they appeared to be friends. In 1 Wharton's Cr. Ev. (10th ed.) § 162, it is said:

"Res gestae are events speaking for themselves, through the instinctive words and acts of participants, but are not the words and acts of participants when narrating the events. What is said or done by participants under the immediate spur of a transaction becomes thus a part of the transaction because it is then the transaction that thus speaks."

In Kernan v. State, 65 Md. 253, 259, 4 Atl. 124, 125, the facts, with reference to this particular point, were somewhat similar to those in the case at bar. There the trial court admitted proof of what occurred at another saloon a short distance from where the homicide took place, and only a few minutes previous thereto. The court said:

"What was said and done by others, at the same time and in company with him, was only a part of what he was directly connected with, and was inseparably connected with the history of his conduct at the time, and necessary to an intelligent appreciation of his doings."

In State v. Elvins, 101 Mo. 243, 246, 13 S. W. 937, 938, the court held that evidence of a previous quarrel and all that was said and done with reference thereto was admissible as part of the res gestæ, saying:

"And the testimony was perfectly competent to show how the quarrel began, and all that was said and done about it by defendant up to the time when a few minutes thereafter he fired the shot which caused the present accusation. Such testimony was a part of the res gestae, and besides it went to show the state of feelings defendant had towards Flynn."

For other authorities on this point see Wood v. State, 128 Ala. 27, 31; 1 Starkie on Ev. 54.

In State v. Kennade, 121 Mo. 405, 413, 26 S. W. 347, 349, the court said:

"The occurrences in the saloon just a few minutes before the homicide, as related by Bass, elucidating as they did the subsequent * * * transactions and giving to them their proper complexion and expression, constituted part of the res gestae, and were therefore competent evidence."

In Territory v. Price, 14 N. M. 262, 269, 91 Pac. 733, the court, in effect, held that all the circumstances leading up to and preceding the homicide elucidated the criminal transaction which subsequently occurred and were admissible therefor.

[3] In conclusion we add that we are of the opinion that the trial court should have permitted appellant to prove by the several witnesses offered by him all that occurred in the conversation and meeting of the parties just prior to the act of homicide. The doctrine of harmless error in criminal cases is a dangerous one, and will not be applied in this case, for we are wholly unable to state as a fact that this evidence would have had no material bearing on the conclusion reached by the jury. The appellant was entitled to show the previous transaction which illuminated the subsequent homicidal act, and the refusal of the court to permit him to show such facts by witnesses other than himself constitutes reversible error, for which reason this case will be reversed and remanded for a new trial; and it is so ordered.

HANNA, J., concurs.

PARKER, J. I concur in the result, but disapprove of the instruction which is sustained by the court.

---

[No. 1913, September 22, 1916.]
[On Motion for Rehearing, December 30, 1916.]
STATE ex rel. CUNNINGHAM et al. v. ROMERO, County Treasurer.