579 S.E.2d 148

The STATE, Respondent,

v.

Bobby WATSON, Appellant.

No. 3617.

Court of Appeals of South Carolina.

Heard Feb. 25, 2003.

Decided March 17, 2003.

Assistant Appellate Defender Eleanor Duffy Cleary, of the South Carolina Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney

General Harold M. Coombs, Jr., all of Columbia; and Solicitor Jay E. Hodge, Jr., of Cheraw; for Respondent.

GOOLSBY, J.:

Bobby Watson appeals his convictions for first-degree criminal sexual conduct (CSC) with a minor and committing a lewd act upon a child under the age of sixteen years, arguing the trial court erred in not allowing him to present surrebuttal testimony in response to the State's reply evidence. We affirm.

## FACTS

This action arises out of allegations that Watson abused his girlfriend's daughter (the victim).[1] In July 1999, the victim, then nine years old, told her grandmother that Watson had sexually abused her for two years. At trial, the victim testified that Watson had made her "suck his private parts" and had "grabbed [her] hand and put it on his front private part and rubbed up and down." The victim also testified Watson made her sit on his penis and that he had touched her "inside." The victim stated the incidents occurred when she stayed with her mother, her brother, and Watson in a two-bedroom trailer and also at her grandmother's house.

Watson denied the allegations and maintained they resulted from the fact that his girlfriend was mad at him for cheating on her, as was her family; he contended the victim "very seldom was in our house." Watson testified that he and his girlfriend lived in a trailer with their son, and that the victim did not live with them during the time the acts allegedly occurred, when the victim was seven to nine. Rather, the victim stayed with her grandmother "practically all the time" and "was a visitor in [his] home [the trailer]." Watson asserted that he was never left alone with the victim. He also presented a defense theory that the allegations could have been the product of suggested memories based on the victim having seen pornographic movies and a sex channel on television that the victim's grandmother allegedly subscribed to.[2]

---

1. Although the victim was not his child, Watson and his girlfriend did have one child together, a son.

2. During an interview with a psychologist, the victim reported having briefly seen, on two occasions, portions of sexually explicit videotapes

He alternatively asserted that if there was any sexual abuse, it was committed by someone else.

In reply, the State presented the testimony of a neighbor, who stated that she often saw Watson, his girlfriend, their son, and the victim at the trailer from 1997 to 1999, although the victim would sometimes stay at her grandparents' house. The neighbor also testified that she went to the trailer to borrow something one day and Watson was home with just his son and the victim. During cross-examination, the witness admitted having a criminal record involving fraudulent checks and shoplifting.

A jury convicted Watson of first-degree CSC with a minor and committing a lewd act upon a child under the age of sixteen years. The trial court sentenced him to thirty years in prison for the CSC charge and a concurrent fifteen years for the charge of committing a lewd act.

## LAW/ANALYSIS

Watson contends he is entitled to a new trial based on the trial court's failure to allow him to present surrebuttal testimony.

After the State presented reply testimony from Watson's neighbor, the following exchange occurred:

MRS. RIVERS [Defense counsel]: Your Honor, I would ask to put the defendant on the stand for rebuttal.

MS. MAYES [State]: I know of absolutely no provision under the law of the Rules of Evidence that allows that, Your Honor.

THE COURT: I don't either.

Any matters of law at this time?

The parties then proceeded to discuss jury charges. Thereafter, Watson himself addressed the court and stated, "Your Honor, I want to ask you can I comment on what this testimony was because this lady right here that just stated this testimony was evicted. Katrina, the mother of the victim, lived with this woman." Watson told the court that his father

---

that were mistakenly put in the VCR. Her grandmother (or another adult), however, had realized the mistake and retrieved them.

would also be willing to testify. The court stated: "I'm sorry. I am not allowed under procedure to let that happen. That was reply from the State after you put up your defense, Mr. Watson."

On appeal, Watson's appellate counsel argues the trial court erred in failing to exercise its discretion or, alternatively, abused its discretion, when it did not allow the defense to present surrebuttal testimony to address allegedly new matter brought out in the State's reply evidence. Counsel contends that, contrary to the trial court's ruling, surrebuttal testimony is allowed under South Carolina law, citing *Camlin v. Bi–Lo, Inc.*[3] and *State v. Summer*[4] as supporting authority.

Initially, we find it questionable whether this issue was preserved for consideration on direct appeal as this argument appears to be raised for the first time on appeal. When the trial court denied the request to present the additional testimony, it did so based on its apparent belief that additional testimony was not allowed after the State's reply. No argument was raised by the defense that such surrebuttal testimony is, in fact, allowed in the court's discretion.[5]

On the merits, contrary to the trial court's statement that it was "not allowed under procedure to let that happen," some authorities note that there are occasions when the trial court may allow surrebuttal testimony in its discretion:

> Surrebuttal is appropriate when, in the judge's discretion, new matter or new facts are injected for the first time in rebuttal[,] especially where the evidence offered in surrebuttal is for the first time made competent by the evidence introduced by plaintiff in rebuttal.

> On the other hand, if the evidence sought to be introduced in surrebuttal could or should have been introduced at an earlier stage, its admission or rejection is a matter for the discretion of the trial court, as where the evidence is

---

3.  311 S.C. 197, 428 S.E.2d 6 (Ct.App.1993).

4.  55 S.C. 32, 32 S.E. 771 (1899).

5.  *See State v. Huggins*, 336 S.C. 200, 205, 519 S.E.2d 574, 577 (1999) ("It is well-settled that issues may not be raised for the first time on appeal.").

cumulative, or where there is no sufficient excuse for not introducing the evidence in chief at the proper time.[6]

■ South Carolina courts have approved the use of surrebuttal testimony in the discretion of the trial court. In *Goethe v. Browning,*[7] our supreme court stated: "Admission of evidence in surrebuttal is very much in the discretion of the trial judge." [8] In *State v. Summer*, the court observed: "[I]f the plaintiff [or the prosecution in a criminal case] in reply puts new matter in evidence, or makes a new case different from that at first made out, it becomes the right of the defendant to call witnesses in surrebuttal." [9] Further, in *Camlin v. Bi–Lo, Inc.*, we stated: "A defendant has a right to respond to new evidence given in reply." [10]

■ Thus, the trial court erred when it stated it was not allowed to permit additional testimony; however, we conclude Watson has suffered no prejudice warranting reversal, in any event, as the State's reply witness did not raise any new evidence. The reply witness's testimony that she saw the victim, her younger brother, her mother, and Watson living together in the trailer and that she saw Watson home alone with the victim and her younger brother was cumulative to the testimony of the victim and her grandmother, who both testified during the State's case-in-chief that Watson had been alone with the victim and her younger brother on nights when his girlfriend was working, and that the victim stayed at the trailer with him. Additionally, we note the victim testified the abuse occurred not only when her mother was gone, but also while her mother was home asleep. Finally, the evidence Watson would have offered, i.e., that the neighbor had been evicted and had lived with his ex-girlfriend, were matters going to credibility that could have been brought out during cross-examination. Defense counsel did elicit on cross-exami-

---

6.  88 C.J.S. *Trial* § 197 (2001) (footnote omitted).

7.  146 S.C. 7, 143 S.E. 362 (1928).

8.  *Id.* at 18, 143 S.E. at 366.

9.  55 S.C. at 40, 32 S.E. at 774 (citation omitted).

10.  311 S.C. at 200, 428 S.E.2d at 8 (citing *Strait v. City of Rock Hill,* 104 S.C. 116, 88 S.E. 469 (1916)).

nation the fact that the neighbor had prior convictions so as to attack her credibility. Accordingly, Watson's conviction and sentence are

**AFFIRMED.**

HEARN, C.J., and SHULER, J., concur.