(No. 2442.   Feb. 2, 1920.)

## STATE v. ARMIJO.

### SYLLABUS BY THE COURT

In this jurisdiction no corroboration of a prosecutrix for rape, by way of testimony of an independent character emanating from an outside source, is required in order to sustain a conviction. But the bald charge of a woman against a man in this regard, unsupported and uncorroborated by facts and circumstances pointing to the guilt of the accused, is insufficient to meet the requirement of the law that a verdict must be supported by substantial evidence.

Appeal from District Court, San Miguel County; Leahy, Judge.

Claudio Armijo was convicted of statutory rape, his sentence was suspended during good behavior, and on his payment into court of a certain sum, he appeals. Reversed and cause remanded, with directions to award a new trial.

CHAS. W. G. WARD, of Las Vegas, for appellant.

NICHOLAS D. MEYER, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT

PARKER, C. J.   The appellant was convicted of statutory rape under section 1493, Code 1915, as amended

by chapter 51, Laws 1915, which makes it a felony to have sexual intercourse with a female under the age of 16 years. The court sentenced the defendant to imprisonment in the penitentiary for 5 years, the minimum penalty provided by the statute, but entered an order, suspending the sentence during good behavior, and upon condition that the defendant pay into the register of the court $15 per month for the support of the child. The defendant thereupon appealed to this court.

The prosecutrix testified that the act was committed on the 15th day of November, 1917, and that it was committed against her consent and notwithstanding her physical resistance. A child was born as the result of such alleged intercourse on June 28, 1918. The prosecutrix never mentioned the occurrence, nor did she make any complaint to any one until in May, 1918, she told Mrs. Apolonio Sena, her mother, and Apolonio Sena, at Mr. Sena's house, when she was confronted with an inquiry from Mrs. Sena as to what was the matter with her; she then being in a condition to show that she was pregnant. She was born June 16, 1903, and was consequently about 14½ years of age at the time of the alleged commission of the offense. She testified that she never had intercourse with the defendant but once, and never before or after with any other person. She testified that at the time of the occurrence she worked for a Mrs. William Booth for about a month, and continued her service for about one week after the occurrence.

Her father, Luis Vigil, testified that the girl went to work for Mrs. Booth on the 15th of November, but did not go back to work at that place any more, thus contradicting the testimony of the prosecutrix. Upon cross-examination, he stated that the reason the girl did not go back to work for Mrs. Booth was because he, the father, did not want her to. When pressed for some reason why he did not want her to go back to work, he could not give one further than to say that he simply did not want her to go.

Luisa Baca Vigil, mother of the girl, testified that the child was born on June 28, 1918, and that the girl shortly after the 15th of November told her what had happened to her. This was flatly denied by the prosecutrix. The mother testified that the girl told her that "that boy had forced her, and that he had promised to marry her." She also described with some detail the circumstances surrounding the alleged accomplishment of the act.

At the close of the state's case, the defendant moved for an instructed verdict upon the ground that there was no corroboration of the prosecutrix's charges, which motion was denied.

For the defense Mrs. William Booth, sister of the defendant, testified that the girl worked for her on July 4, 1917, and did not return to work until the following March, in 1918. She testified positively that the girl did not work at her house in November, 1917.

William Booth, brother-in-law of the defendant, testified that the girl did not work at his house in November, 1917, that she was there on July 4, 1917, looking after the children while he and his wife went to the Cowboys' Reunion parade. He said that on March 19, 1918, she commenced to work again for his wife, and worked four or five days. They had sent for her sister, but her people had sent her. He testified that he paid the bills, but could not afford to keep a girl unless the same was absolutely necessary, and that he knew positively that the girl did not work at his house in November, 1917.

The defendant testified in his own behalf, and stated that the girl worked at his sister's house in July, 1917, and in March following. He said that outside of these times he never saw her at the house, and that he never went out with her. He denied the alleged act of November, 15, 1917, or that at any other time he had intercourse with her.

In rebuttal, in order to corroborate the prosecutrix, a woman, Mrs. Francisquita Tafoya, was called, and testified that she knew her to have been looking after the Booth children for about a month in 1917. She failed, however to corroborate the prosecutrix, in that she testified that it was in April that she saw her. Rosa Vigil, sister of the prosecutrix, testified that the girl worked from April to July for Mrs. Booth, and then in November, but failed to state more than the bald fact that it was in November that she worked for Mrs. Booth.

At this point the case was closed, and the state rested, but upon application of the court the defendant was allowed to put upon the stand Cristobal Montoya, who had been under process, but who had just then arrived in the courtroom. In her testimony the prosecutrix had denied that she ever went anywhere with any of the boys to picture shows or elsewhere. This witness testified that some time in April, 1917, he commenced paying attention to the prosecutrix, and went out with her to picture shows on several occasions, and that on four or five occasions the girl came to his room to visit with him. He denied, however, ever having sexual intercourse with her.

The foregoing is a fair resume of the testimony in the case. An analysis of the same compels one to conclude that the charge made against the defendant is an absolute and palpable fraud, designed to victimize an innocent young man. The prosecutrix testified to the bald facts that she was alone in Mrs. Booth's house on the afternoon of the 15th of November, 1917; that the defendant came in, locked the doors, threw her down on the bed and consummated the act after overpowering her resistance. Several apparently reputable witnesses testified that she was not working at the place in November, 1917, and their testimony is so circumstantially fortified as to carry absolute conviction, notwithstanding that they are relatives of the defendant. On the other hand the bald statement is made by relatives of the

prosecutrix that she worked at the Booth house on the
15th of November, 1917. None of them saw her go to
the house, and none of them knew whether she was work-
ing at the house or not. From the 15th of November
until some time in May, 1918, the prosecutrix never told
a person about what had happened to her. She finally
made a statement when confronted with her condition as
manifested by her external appearance, and implicated
the defendant. In an attempt to assist the prosecution,
the mother of the prosecutrix testified that shortly after
the occurrence the girl told her about the circumstances,
but in this she flatly contradicted the prosecutrix, leav-
ing the substance and effect of the testimony of the two
of no value whatever.

We have then a case where the state must rely upon
the bald statement of a girl that she was raped on a cer-
tain day and at a certain place by a certain man, with-
out the support of a single fact or circumstance tending
to corroborate that statement. The question then is, Is
this sort of proof sufficient to sustain the conviction?

In State v. Ellison, 19 N. M. 428, 144 Pac. 10, it is
stated:

"But in the absence of a statute a man may be convicted of
rape on the uncorroborated testimony of a strumpet, or he
may be convicted on the uncorroborated testimony of a girl
below 10 years of age."

In that case the court reviewed all of the New Mexico
cases, and said further:

"It is, of course, true that in a sense the testimony of a
prosecutrix must be corroborated. That is it must bring
together a number of surrounding facts and circumstances
which coincide with and tend to establish the truth of her
testimony. Without such surrounding facts and circum-
stances, the bald statement and charge of a woman against
a man would be so devoid of testimonial value as to render
it unworthy of belief, and to cause it to fail to meet the re-
quirements of the law, namely, evidence of a substantial char-
acter. In this sense there must, of course, be corroboration.
In some of the states by reason of the terms of the statute,
corroboration must come from some outside source in the
form of testimony of an independent character, disconnected

from the testimony of the prosecutrix. It is not in this sense, in this jurisdiction, that the prosecutrix must be corroborated."

With this statement of the position of the court upon this subject we are entirely satisfied at this time, and see no reason to depart from it. If there were a single unequivocal fact, established by a single witness, shown by his examination to be fair and willing and able to tell the truth, which pointed unerringly to the guilt of the defendant, we should say that the verdict should not be disturbed. There is no such fact in this record, and for that reason the verdict is not supported by any substantial evidence.

For the reasons stated, the judgment of the lower court will be reversed and the cause remanded, with directions to award a new trial; and it is so ordered.

ROBERTS and RAYNOLDS, J.J., concur.