(No. 2661.    Nov. 29, 1921.)

## STATE V. CLEVENGER.

### SYLLABUS BY THE COURT.

(1)    A witness may be interrogated upon cross-examination concerning specific acts of moral misconduct and wrongdoing, to affect the credibility of such witness and the weight to be given to his or her testimony, but extrinsic or independent evidence regarding such matters is not admissib'e, as the cross-examiner is concluded by the answers given by the assailed witness with reference thereto.        P. 467

(2)    Evidence reviewed, and **held**, that the prosecutrix is not corroborated as is required in a case of this character, and therefore there is not sufficient evidence to sustain the verdict.        P. 468

(3)    In case of this kind, it is error to refuse a proper tendered instruction of a cautionary character advising the jury of the nature of the case, the ease with which an accusation of this kind may be lodged and the difficulty of defending against the same, and the necessity and extent of resistance required of the prosecutrix as well as the force used to overcome the same, where no proper instruction covering the subject is contained in the court's general instruction. P. 471

Appeal from District Court, San Miguel County; Leahy, Judge.

Jerome Clevenger was convicted of rape, and he appeals.    Reversed and remanded, with directions to award new trial.

O. O. Askren, of Santa Fe, and Chas. N. Higgins, of East Las Vegas, for appellant.

H. S. Bowman, Atty. Gen., and A. M. Edwards, Asst. Atty. Gen., for the State.

OPINION OF THE COURT.

BRATTON District Judge.  Appellant was convicted of the crime of rape alleged to have been com- upon one Daisey Agnes Madole, and was sentenced to serve a term of not less than five nor more than seven years in the penitentiary, from which he has perfected this appeal.

[1] During the trial Mrs. Harriet Fox became and was a very material witness in behalf of the appellant, testifying to certain facts which strongly contradicted the testimony of the prosecutrix.  Upon her cross-examination, certain questions were propounded to her by which it was sought to prove that prior to her marriage to her present husband, Gradon Fox, she had lived with him in a state of adultery at Pratt, Kan., and further that prior to her said marriage, she had received congratulations from certain friends upon their supposed marriage of herself and her said husband.  She denied each and all of these acts on her part.  Upon rebuttal and over proper objections of the appellant, the state was permitted to prove by C. M. Gilmore and Mrs. C. M. Gilmore that said witness had lived in such state of adultery, and by J. R. Massie that she had received such congratulations.  This action on the part of the trial court forms the basis of appellant's first assignment of error.  We think this constituted impeachment of the witness upon collateral and immaterial matters by extrinsic and independent evidence beyond that given by the witness herself.  It is the settled law in this jurisdiction that a witness may be interrogated upon cross-examination concerning specific acts of moral misconduct and specific acts of wrongdoing of such witness to affect the credibility of such witness and the weight to be given to his or her testimony, but it is equally well

settled that the cross-examiner is bound by the answers given to such questions and cannot produce other and independent evidence with reference to such matters beyond that given by the assailed witness; otherwise, the number of collateral issues presented might· become so numerous and so confuse the real issues as to prevent their due consideration and correct determination. The rule here applicable was stated by this court in State v. Perkins, 21 N. M. 135, 153 Pac. 258, in the following language:

"Complaint is also made of the refusal of the trial court to permit the appellants, on cross- examination of Mrs. Kubena, a very important witness for the state, to ask the witness as to specific acts of wrongdoing on her part. ·The same is true of the prosecuting witness, Mrs. Knapp. The law in this jurisdiction was settled by the territorial Supreme Court, in the cases of Territory v. Chaves, 8 N. M. 528, 45 Pac. 1107; Borrego v. Territory, 8 N. M. 446, 46 Pac. 349, and Territory v. De Gutman, 8 N. M. 92, 42 Pac. 48. There is a sharp conflict in the authorities upon this question. But, as the territorial Supreme Court has adopted the rule that proof of a witness' particular overt acts of wrongdoing are ordinary relevant as impeachment evidence, but that such acts can never be shown by any evidence outside the examination of the assailed witness, and that the extent of such examination rests largely in the discretion of the trial court, we can see no good reason to depart from the rule of practice thus established."

This rule was again announced and this case cited with approval in State v. Bailey, 27 N. M. 145, 198 Pac. 529. We think the court erred in permitting such rebuttal evidence, and therefore sustain this assignment of error.

[2] By four separate assignments of error, appellant challenges the verdict of the jury and urges a reversal of the case for lack of sufficient evidence to sustain the same. A decision upon these assignments requires a brief review of the evidence adduced. It appears from the record that the prosecutrix is a woman 25 years of age and weighs 130 pounds; that at the time of the alleged crime, she and her husband were tenants of appellant residing in a house

owned by him situated about 30 feet from the residence occupied by him and his family; that on the opposite side of the house so occupied by the prosecutrix and her husband was a residence about 12 feet away, which was then occupied by a family named Lorenzen; that said house so occupied by the prosecutrix was in a thickly settled part of the residential section of the city of Las Vegas, facing and bordering upon one of its well-traveled streets. The prosecutrix testified that on the morning of June 1, 1921, while she was clad only in her nightgown with a bungalow apron over it, appellant came into her house, stating that he wanted to see a place in the roof of the house that had been leaking; that she showed him the place and he then grabbed her, threw her down, and ravished her. She admits she did not make any outcry, her only explanation for not doing so being that she was too frightened; that her clothing was not torn, and neither was appellant's; that she was not bruised, scratched, nor hurt except a small lump about the size of a pea that was then in her right breast afterwards became enlarged to about the size of a marble; and that a small place in her private parts became sore; that one Doctor Fleming examined such sore spot. She admits that on Friday afternoon—this had occurred on Wednesday morning—appellant again came to her home while Mrs. Fox was there visiting her, and he then made some further examination regarding the leak in the roof of the house, during which time the prosecutrix showed him the place that had leaked, and she also talked with him concerning her making a trip to Santa Fé, whereupon he told her the trains had not been running on account of a washout and suggested she might telephone from his residence to ascertain if they were again running on schedule; that after he left, she told Mrs. Fox she would not go to appellant's house and use his telephone while his wife was away, as she might return and find her there. She further admits that on Thursday after

she had been assaulted on Wednesday morning she asked appellant's wife if her (prosecutrix's) brother might use her sewing machine, and also on the same day she went to the back door of appellant's residence and there asked appellant's wife how to find Mr. Drake's office, as she wanted to make some inquiry regarding her pass to Santa Fé. It further appears from the stenographic notes taken by the official court stenographer of the fourth judicial district, that at the preliminary hearing in this matter, which was held just one week prior to the trial of this case in the district court the prosecutrix testified to several vital matters which positively contradicted her testimony given upon the trial in the district court. This, we think, is a fairly complete and accurate résumé of the testimony of the prosetrix. We have carefully examined the entire record and find there was practically no testimony offered which could be considered corroborative of this evidence. Her husband did testify to certain conversation which he contends he had with the appellant six days after the alleged offense, but the burden of such conversation seems to have been concerning a money settlement of the affair.

The improbabilities of the detailed affair thus outlined, when considered in connection with her admitted conduct with and toward appellant and his wife after she says she had been ravished, and its variance with human experience, are obvious and need no analysis or prolix discussion. The necessity of corroboration of a prosecutrix in a case of this character was stated by this court in State v. Ellison, 19 N. M. 428, 144 Pac. 10, as follows:

"It is of course true that in a sense, the testimony of a prosecutrix must be corroborated. That is, that it must bring together a number of surrounding facts and circumstances which coincide with and tend to establish the truth of her testimony. Without such surrounding facts and circumstances, the bald statement and charge of a woman against a man would be so devoid of testimonial value as to render

it unworthy of belief, and to cause it to fail to meet the requirements of the law, namely, evidence of a substantial character. In this sense there must, of course, be corroboration. In some of the states, by reason of the terms of the statutes, corroboration must come from some outside source in the form of testimony of an independent character, disconnected from the testimony of the prosecutrix. It is not in this sense, in this jurisdiction, that the prosecutrix must be corroborated."

Again, in the case of State v. Armijo, 25 N. M. 666, 187 Pac. 553, referring to the Ellison Case, the court further said:

"With this statement of the position of the court upon this subject we are entirely satisfied at this time, and see no reason to depart from it. If there were a single unequivocal fact, established by a single witness, shown by his examination to be fair and willing and able to tell the truth, which pointed unerringly to the guilt of the defendant, we should say that the verdict should not be disturbed. There is no such fact in this record, and for that reason the verdict is not supported by any substantial evidence."

We think the prosecutrix in this case is not corroborated as required under the law of this state as announced in the two decisions referred to.

[3] Appellant further complains of the refusal of the trial court to give to the jury his requested instruction numbered five which was of a cautionary character, advising the jury that the crime charged was a heinous one, and well calculated to create a prejudice in their minds against the accused, and calling their attention to the ease with which such an accusation could be lodged and the difficulty in defending against it. It further stated that the voluntary submission or reluctant yielding on the part of the prosecutrix to the lust of the appellant would not support a verdict of guilt, but that she must have resisted to the extent of her power. An instruction similar to the one here requested was tendered and refused in the case of Reynolds v. State, 27 Neb. 90, 42 N. W. 903, 20 Am. St. Rep. 659, which was held to be reversible error. A very ac-

curate statement of the general text covering this subject may be found in the following language in 22 R. C. L., p. 1229, § 66:

"On a trial for rape, where the evidence is conflicting as to resistance and force, the trial court should in its instructions caution the jury that prejudice is liable to be aroused against the accused because of the heinous nature of the crime charged, and it is customary to caution the jury that because of the difficulty of disentanglement from so heinous an imputation as compared with the ease with which it can be fastened on reputable persons, the utmost discretion should be exercised to avoid attaching undue weight to the uncorroborated accusation of a prosecutrix."

The instructions given did not cover this phase of the case, and we think the court erred in refusing to give the tendered requested instruction.

Other assignments of error are presented, but we think it is unnecessary to discuss them, as they pertain to matters which will not likely occur upon a subsequent trial.

For the reasons stated, the judgment of the trial court will be reversed and the cause remanded, with directions to award a new trial and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.