479 P.2d 537

STATE of New Mexico, Plaintiff-Appellee,

v.

Clarence Floyd CARRILLO, Defendant-
Appellant.

No. 517.

Court of Appeals of New Mexico.

Dec. 11, 1970.

Robert N. Singer, Albuquerque, for de-
fendant-appellant.

James A. Maloney, Atty. Gen., Santa Fe,
Frank N. Chavez, Asst. Atty. Gen., for
plaintiff-appellee.

## OPINION

OMAN, Judge.

Defendant appeals from his conviction of forcible rape. We affirm.

There is substantial evidence to support a determination that the following events occurred. Defendant met prosecutrix at a cocktail lounge and bar where she was employed as a bartender and cocktail waitress. She mistook defendant for a person she had previously known. At about 7:00 p. m. they left the bar and lounge in his automobile for the purposes of delivering some band uniforms to a motel and to thereafter have dinner together before she was to return to her employment at 9:00 p. m.

She delivered the band uniforms, and then she and an acquaintance of hers returned to the automobile where defendant was waiting. They then drove the acquaintance to a night club. As the acquaintance departed, he also referred to defendant as the person for whom the prosecutrix had mistaken defendant.

Upon her return to the automobile with her acquaintance after delivering the uniforms at the motel, she observed money had been taken from her purse, which she had left in defendant's automobile. She accused defendant of having taken the money and he denied it. An argument ensued, and this argument continued after the acquaintance was delivered at the night club.

Defendant failed to drive toward the restaurant at which they had planned to have dinner. At first he stated he was taking a different route. Then, as they obviously were going away from the restaurant and toward the outskirts of the city, he stated he was going by his brother's place to get money to replace that which the prosecutrix had accused him of taking. She urged him to forget the money, but he insisted. As they drove by a place which he said was his brother's, he stated his brother was not at home. He then said he would get the money from a brother-in-law. As he drove by a place supposedly that of a brother-in-law he observed that the brother-in-law was not at home. He then stated he was going to a pickle factory where he said his mother worked.

By this time the prosecutrix became suspicious and began noting street and road signs. She was still protesting and asking defendant to forget the money and return her to her place of employment.

Defendant drove by a number of houses, slowed down, and sounded the horn in his automobile. He finally drove by the pickle factory into an isolated area in the foothills south of Albuquerque where he stopped. He then announced he was going to have sexual relations with her, threatened and began struggling with her. In the struggle he removed some dark glasses from her and threw them from the automobile. These glasses apparently were later recovered by her or by him, because they were subsequently found near the ditch embankment to which reference is hereinafter made. Defendant also took from her, broke and threw from the automobile, a ball point pen which she had taken from her purse and was attempting to use as a defense weapon.

He forced her from the automobile, beat her into unconsciousness with his hands and fists, removed a portion of her clothing, and was having sexual relations with her when she regained consciousness. He later raped her again in the rear seat of the vehicle and forced her to take his penis into her mouth.

He then ordered her to lie in the rear seat in her nearly naked condition and threatened to kill her if she failed to obey him. He then began driving. At a certain point he ordered her to dress, climb over the back of the front seat, comb her hair, pretend she was very fond of him, and answer in the affirmative all questions he should ask upon their stopping at a certain house. She obeyed his orders under threats that he would run his vehicle over

her as he stated he had over another young lady.

They stopped at a house where about eleven or twelve young men were gathered in the yard drinking beer by a four-door Lincoln automobile. They were there briefly. Two or more men entered defendant's vehicle and he drove off toward an isolated place west of Albuquerque. The others followed in the Lincoln. They stopped near a ditch bank. Defendant ordered her from his car to the rear seat of the Lincoln, ordered her to remove her clothing, and then began assigning to the other men the order in which they were to have sexual relations with her. By this time she was offering no resistance because of fear and exhaustion.

Four, five or more of the men had relations with her. During this time she kept fainting, or lapsing into unconsciousness. Defendant then ordered a period of rest for her and gave her a beer to drink.

About this time two deputy sheriffs in an officially marked vehicle on a routine patrol came on the scene. They immediately directed their spotlight on the vehicles, and the men began running over the ditch bank. They noticed some men dragging and forcing a woman toward the embankment.

Prosecutrix had been ordered by defendant to run, and, thinking it was another group arriving to also rape her, she at first made efforts to comply. Then she noticed the official markings on the sheriff's vehicle, broke away and started running toward the vehicle and the officers crying for help and that she had been raped. She was in a state of hysteria. The only clothing she had on was a brassiere which was partially torn and hanging on one side.

The officers noticed blood on her arms, face, legs and body. They also noticed, as did the doctor who later examined her, that she had scratches and bruises on her face, arms and legs, and these are reflected, at least in part, in photographs taken of her the following afternoon and introduced into evidence.

The officers ordered the defendant and three others, who failed to make their escape over the embankment, to halt, and placed them under arrest. Then, at the request of prosecutrix, the officers gathered up her clothing, which was found partly in the Lincoln, partly in defendant's vehicle and partly on the ground.

Although not in the order presented in the briefs, the first point to be determined is whether the trial court erred in admitting into evidence the dark glasses and the ball point pen taken from prosecutrix and thrown by defendant from his automobile at the place where he first attacked and raped her. It is defendant's position that these items, later found by a police officer, were not admissible because they were not properly identified, and because they supported the prosecutrix' testimony that she had been forcibly raped and discredited defendant's testimony that she had willingly submitted. As already stated, the glasses were found by the officer near the ditch bank, and there is absolutely no question about the presence of prosecutrix, defendant and the other men at that place. The pen was found at the place where prosecutrix stated she was first raped and the pen thrown by defendant from the automobile. She was present when it was found by the officer.

The objections to the identification of these items of evidence are: (1) the prosecutrix was recalled to the witness stand to identify the items after having been excused from the witness stand, after the prosecutor had announced he did not intend to recall her as a witness, and after she had sat in the courtroom and listened to the testimony of the officer who recovered the items from the areas where they were found; and (2) "she could *not* positively identify the items * * * as hers."

The prosecutrix was never excluded from the courtroom. She was called as the first witness by the prosecution. She was excused for a while to permit two other witnesses to testify, and then resumed

with her testimony. At the close of her testimony and after the court had excused and advised her she could "sit in the courtroom or outside the room," defendant's attorney asked that she be requested to wait outside the courtroom if the prosecution intended to recall her. The Assistant District Attorney announced the prosecution did not intend to recall her. The court then observed, "She is the prosecuting witness anyway," and the trial continued.

When she was recalled for the sole purpose of identifying the glasses and pen, no objection whatever was made to her testimony, and she was cross-examined by defendant's attorney concerning the same.

■ In any event, the exclusion of witnesses from the courtroom is a matter resting within the sound discretion of the trial court. McCrossen v. United States (10th Cir. 1965), 339 F.2d 810, 11 A.L.R.3d 1268; State v. Romero, 69 N.M. 187, 365 P.2d 58 (1961); State v. Curry, 27 N.M. 205, 199 P. 367 (1921); Sweitzer v. Sanchez, 80 N.M. 408, 456 P.2d 882 (Ct.App. 1969). There is nothing here to indicate an abuse of discretion on the part of the trial court in permitting the prosecutrix to remain in the courtroom, or to be further called as a witness for the purpose of identifying the glasses and pen.

In her testimony she positively identified the glasses as belonging to and as having been purchased by her at a named store. She also positively identified the pen as the one she had taken from her purse as a weapon of defense and which had been broken and thrown by defendant from his automobile. It is true on cross-examination she admitted the glasses and the pen were not originals and there were others like them. However, she at no time expressed any doubts about her identification of them as being hers.

In any event, positive identification is not essential to the admission of demonstrative evidence. Calhoun v. State, 406 P.2d 701 (Okl.Crim.1965); People v. Smith, 63 Ill.App.2d 369, 211 N.E.2d 456 (1965). Generally, on the questions of identifica-tion and admissibility of this type of evidence see State v. Gray, 79 N.M. 424, 444 P.2d 609 (Ct.App.1968); 2 Jones on Evidence, Civil and Criminal, §§ 442 and 443 (5th Ed. 1958). See also Hodgkins v. Christopher, 58 N.M. 637, 274 P.2d 153 (1954).

■ Defendant is unquestionably correct when he says the testimony as to the pen and its admission into evidence as an exhibit tended to support the testimony of the prosecutrix that she was forcibly raped and to discredit his contention that she voluntarily engaged in sexual relations with him. These were the purposes of this evidence, which was clearly relevant to issues in the case. Nothing said in State v. Kidd, 24 N.M. 572, 175 P. 772 (1917), upon which defendant relies, suggests this relevant evidence was not properly admissible. In the *Kidd* case the conviction was reversed and a new trial ordered because of the introduction of irrelevant testimony which discredited defendant's principal witness and was highly prejudicial to defendant's case.

■ The only probative effect the admission into evidence of the glasses could have had was to establish their existence, and to establish that prosecutrix had been in the area where they were found. Neither the existence of the glasses nor the fact that prosecutrix had been at the place where they were found is in dispute. Therefore, their admission into evidence could not possibly have prejudiced defendant, even if we were to find they should not have been admitted, which we do not.

The next point to which we direct our attention is defendant's claim that the conviction cannot be permitted to stand because the testimony of the prosecutrix is inherently improbable and is not corroborated by evidence pointing unerringly to defendant's guilt.

The evidence, upon which defendant predicates his contention that the prosecutrix' testimony is inherently improbable, is set forth above, except for her testimony (1) as to the route taken by defendant as

they drove through Albuquerque, which differed from his testimony in this regard, (2) that she remembered no stops being made by defendant's automobile as he drove from the night club at which they left the passenger until they entered the freeway, (3) that she made no outcry, even when plaintiff slowed his vehicle, and (4) that upon regaining consciousness and finding defendant having sexual relations with her, she noted her boots and pants had been removed, and her pants were beneath her.

■ We find nothing inherently improbable in her story, but, in any event, there was more than sufficient corroborative evidence of her claim that she had been raped to remove it from the rule of inherent improbability discussed in the following cases upon which defendant relies: State v. Till, 78 N.M. 255, 430 P.2d 752 (1967) cert. denied, 390 U.S. 713, 88 S.Ct. 1426, 20 L.Ed.2d 254 (1968); State v. Maestas, 76 N.M. 215, 413 P.2d 694 (1966); State v. Shouse, 57 N.M. 701, 262 P.2d 984 (1953); State v. Richardson, 48 N.M. 544, 154 P.2d 224 (1944); State v. Taylor, 32 N.M. 163, 252 P. 984 (1927); State v. Clevenger, 27 N.M. 466, 202 P. 687 (1921); State v. Armijo, 25 N.M. 666, 187 P. 553 (1920); Mares v. Territory, 10 N.M. 770, 65 P. 165 (1901).

Without trying to detail all the corroborating evidence and circumstances, we call attention to the following: (1) the efforts, and success of most of the men, to effect an escape when discovered by the officers; (2) the broken pen heretofore discussed; (3) the torn and disarranged condition of prosecutrix' brassiere, which was the only article of clothing she was wearing when rescued by the officers; (4) the scattered locations of her other clothing when rescued; (5) the bloody and bruised condition of her face, body, arms and legs, (there is no evidence she was beaten by anyone but defendant); (6) her cries for help and accusations of rape made immediately upon recognizing the official markings on the officers' vehicle; (7) her condition of hysteria upon being rescued by the officers; (8) a cigarette burn on defendant's one arm, which is consistent with her story that she burned him with a cigarette during her struggle with him; (9) blood on defendant's shirt; and (10) scratches on defendant's arms.

Defendant's final contention is that, by being tried jointly with one of the other men captured at the scene by the officers, he was denied a fair trial, and this denial constituted fundamental error requiring reversal.

■ The granting of separate trials to jointly-charged defendants is a matter resting within the discretion of the trial judge. State v. Aull, 78 N.M. 607, 435 P.2d 437 (1967), cert. denied 391 U.S. 927, 88 S.Ct. 1829, 20 L.Ed.2d 668 (1968); State v. Turnbow, 67 N.M. 241, 354 P.2d 533 (1960). Here, the question of severance was never presented to the trial judge. Any right defendant may have had to a separate trial is not to be equated with the concept of fundamental error. This concept is bottomed upon the innocence of the accused, or the corruption of justice. It is resorted to in a criminal case only if the innocence of defendant appears indisputable, or the question of his guilt is so doubtful that it would shock the conscience to permit his conviction to stand. State v. Rogers, 80 N.M. 230, 453 P.2d 593 (Ct. App.1969). Nothing presented by defendant in his arguments, and nothing we can find in the entire record of this case, suggests any such doubt as to his guilt.

The judgment of conviction should be affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.

WOOD, J., not participating.