13 P.(2d) 883

## STATE v. DIAZ.

No. 3618.

Supreme Court of New Mexico.

Aug. 25, 1932.

W. A. Sutherland, of Las Cruces, for appellant.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

Barker & Fahy, of Santa Fé, amicus curiæ.

WATSON, J.

Dionicio Diaz was convicted of murder in the first degree for the slaying of Jose Pavia and appeals from the resulting capital sentence. On March 12, 1932, we handed down an opinion affirming the judgment. Since, after rehearing, we have reached a different conclusion, and since many matters treated in the original opinion are now unnecessary to decide, that opinion will be withdrawn.

On the dark and rainy evening in question the deceased and his wife were, and had been for several hours, attending a wedding. Appellant had not been invited. The husband and wife were on the unlighted veranda in front of the house. Most of the guests had just left to go to the dance celebrating the event, and the wife of the deceased was the only immediate eyewitness of the tragedy. Appellant came on the veranda and there the homicide occurred.

Mrs. Pavia testified that just as appellant came to the veranda she heard some one greet him, "Hello, Nicho"; that he replied, "Don't call my name"; that appellant, on entering the porch, turned to the right, away from the deceased and the witness, approached the kitchen door, then returned to the head of the veranda steps, and, facing deceased and the witness, inquired, "Are you enjoying yourselves?" Thereupon the witness says the deceased replied, "It is none of your business," and appellant at once fired five shots, killing the deceased, and wounding the witness. The deceased, the witness says, fell with pistol in hand, but did not shoot.

Other facts and circumstances shown in evidence by the state, and proper inferences therefrom, warranted the jury in concluding

that appellant entertained enmity toward deceased and his wife, had threatened to kill them both, armed himself for the purpose, sought them out, and at least partially accomplished his deliberate design.

Appellant here contends that there was no evidence upon which the jury should have been permitted to base a verdict of murder in the first degree. We cannot doubt that there was ample evidence of "a thinking over with calm and reflective mind" (State v. Smith, 26 N. M. 482, 194 P. 869, 872), or of that "fixed and settled deliberation and coolness of mind" (State v. Kile, 29 N. M. 55, 218 P. 347, 352), as this court has defined "the element of deliberate intention or deliberation" (State v. Smith, supra), which makes the homicide murder in the first degree.

██ But, appellant's testimony presents a different view of the matter. It throws a different light upon the previously occurring trouble and denies the threats. It asserts a foreign and innocent reason for being armed. It explains away what, according to the state's theory, was a loitering about the premises. He claims that he came there seeking some one else. He testified that he did not reply, "Don't call my name," but that he said, "Don't call me 'Nicho'; call my name"; that from the head of the steps he turned immediately to the left, facing, but not seeing, deceased and his wife, and went to the door of the living room, the door being open and the room lighted; that as he stood looking in, he heard the deceased

exclaim from his left and rear, "Get away from there," which exclamation was immediately accompanied by two shots, both taking effect on his person; that until that moment he was ignorant of the presence of the deceased and the wife; and that he immediately turned and emptied his pistol in the direction from which he had been fired upon.

Between the extreme claims of the state and of the accused the jury was at liberty to formulate its own theory. It requires no specification to demonstrate that well within the evidence there is a case of murder in the second degree. It is also plain that, under the principle laid down in State v. Kidd, 24 N. M. 572, 175 P. 772, voluntary manslaughter was within the evidence.

Yet neither of these lesser degrees of homicide, within the information and within the evidence, was submitted or requested to be submitted.

It cannot be doubted that the trial judge thus failed in the performance of a statutory duty. "Upon the trial of any case, either civil or criminal, in the district courts held within and for the various counties of the state, all instructions to the jury asked by either party, whether given or refused, shall be in writing, and all instructions given by the court at the request of either party or upon its own motion, shall be in writing; and it is hereby made the duty of the court in all cases, whether civil or criminal, to instruct the jury as to the law in the case, and a failure or refusal so to do shall be suf-

ficient ground for a reversal of the judgment by the supreme court upon appeal or writ of error: Provided, however, that the parties to the suit or their attorneys may waive upon the record the instructions in writing." 1929 Comp. St. § 70-102.

Since second degree murder was so plainly within the evidence, neither the able counsel nor the learned trial judge can have mistaken it. The latter must have acted upon the view that it was his duty to submit only such of the lesser degrees of homicide as appellant requested. The former must either have considered that the omission insured reversal or have determined in any event to gamble on the verdict. Such view and practice we think more or less prevalent at the bar and on the bench. We disapprove of them. Both the statute and public policy are thus offended.

The accused may be convinced that a submission of first degree or nothing will be to his advantage. The prosecutor may think that it will aid the verdict he seeks. As a matter of trial strategy we make no comment. But the ends of justice require that a guilty person be convicted of the very crime committed. Justice miscarries if he be either condemned to death or go free, when really guilty of murder in the second degree, or of manslaughter. The judge alone is truly impartial. The responsibility is unescapably his. If it be true that, because of other statutes or of other public policy, his errors in this field are not reviewable, his duty will be but the greater and his responsibility the graver.

We may here note, in passing, an expression found in State v. Trujillo, 27 N. M. 594, 203 P. 846, 849: "It is within the province of the court to submit to the counsel for the state and for the defendant in every case the question as to what degree should be submitted to the jury. When thus called upon by the court it is their duty to speak, and a refusal by counsel for defendant to take a position upon the matter will amount to a waiver of the error of the court in that regard, if error shall occur. It will be available error only in case the court fails to agree with counsel as to the proper scope of the instructions." While, as a matter of fairness and prudence, we commend the practice of hearing both counsel, as to the degrees of homicide to be submitted, it is not that the court may thus shift the responsibility which the law places on him; nor are we now prepared to say that error can thus be rendered unreviewable.

 Error of the trial court does not always or necessarily result in reversal. Appellant, notwithstanding his failure to point out or object to the error or to request submission of lesser degrees of homicide, here maintains that he is entitled to a new trial. This presents the important question in the case. It is a question of this court's duty and responsibility.

It is a general principle of appellate procedure that errors not in some manner brought to the attention of the trial court may not be relied on in the appellate court. So we have many decisions to the effect that errors

of misdirection or of nondirection, not properly preserved, are not reviewable. We cite but a few. Territory v. Gonzales, 11 N. M. 301, 68 P. 925; Territory v. Watson, 12 N. M. 419, 78 P. 504; Territory v. Caldwell, 14 N. M. 535, 98 P. 167; Territory v. Gonzales, 14 N. M. 31, 89 P. 250; Territory v. Leslie, 15 N. M. 240, 106 P. 378; State v. Padilla, 18 N. M. 573, 139 P. 143; State v. Johnson, 21 N. M. 432, 155 P. 721; State v. Dickens, 23 N. M. 26, 165 P. 850; State v. Martinez, 30 N. M. 178, 230 P. 379; State v. Hurst, 34 N. M. 447, 283 P. 904.

Within the field of operation of this principle the situation will be this: The statutory duty of the trial court, though of the utmost importance, and binding upon conscience, and subject to be invoked by the accused, is a duty uncontrollable and unreviewable by this court, if the accused has failed to invoke it. Such is the necessary result of the joint operation of the two principles.

The necessity of preserving questions for review, as well as being a general principle, has received statutory recognition.

The Kearney Code, under the title "Courts and Judicial Power" (§ 12), contains this: "No exception shall be taken in an appeal to any proceeding in the circuit court, except such as shall have been expressly decided in that court." Comp. L. 1897, p. 70.

Laws 1882, c. 4, § 5, provided: "Exception to the decision of the court upon any matter of law arising during the progress of the cause, or to the giving or refusing of instructions, must be taken at the time of such decision."

These two provisions were preserved until combined in the 1907 Appellate Procedure Act (c. 57, § 37), thus: "Exceptions to the decisions of the court upon any matter * * * arising during the progress of a cause must be taken at the time of such decision and no exceptions shall be taken in any appeal to any proceeding in a district court except such as shall have been expressly decided in that court."

Whether correctly or not, these provisions have been held applicable in criminal cases.

It is a salutary requirement that an accused person point out the errors in the administration of justice as they occur, so that the court may avoid them. The Law's purpose is to give him one fair trial—not repeated chances for an acquittal. We should be reluctant to surrender any of this principle. Indeed, we consider it too well established generally to be questioned.

The question now before us is whether, in this jurisdiction, the general rule is subject to an exception in homicide cases where the error urged on appeal is failure to submit a degree of criminality within the charge and within the evidence. Here we find confusion in the decisions.

In Territory v. Yarberry, 2 N. M. 391, decided in 1883, it was complained, as here, that the instructions limited the jury to murder in the first degree or justifiable homicide. The matter was disposed of with the remark: "We cannot see by a careful consideration of

all the charges asked by defendant and given by the court that the prisoner's counsel took any other view of the case, or requested the court to instruct the jury in any other manner." No reference was made to statutory provisions. The trial was in May, 1892. At that time it was required that "the court shall instruct the jury as to the law of the case" (Laws 1880, c. 6, § 23), and that the accused must take exception to the instructions at the time (Laws 1882, c. 4, § 5). It may well be that the court then considered these provisions not applicable in criminal cases.

In Territory v. Romero, 2 N. M. 474, decided at the same term, the accused seems to have excepted to the omission to submit the lesser degrees. But, in laying down the rule, Judge Bell said: "We deem it to be the duty of the court to charge as to all such degrees [as are within the evidence], and that a failure to do so is error, *if objected to at the proper time.*"

In Territory v. Nichols, 3 N. M. (Gild.) 103, 2 P. 78, decided January, 1884, the accused, under an indictment for murder in the first degree, was convicted in the second degree. Though he had not requested a submission of murder in the fourth degree, he claimed on appeal that it was within the evidence, and claimed a new trial for the failure to submit that offense. Judge Bell, also delivering this opinion, here emphatically asserted the duty of the trial judge to instruct as to all the law of the case, whether requested or not. He cited Laws 1880, c. 6, § 23. He made no mention of the Yarberry Case, supra, or of his own expression in Romero's Case, supra.

He reverted to the pronouncement of Prince, C. J., in Territory v. Young, 2 N. M. 93, that a trial judge would exclude a degree of homicide "at his peril."

As affecting the result in the Nichols Case it may be noted that the court concluded that there was no evidence to sustain the verdict in the second degree; the accused being, under the evidence, guilty in the fourth degree or not guilty. Nevertheless, it was flatly held that the right of an accused to challenge the instructions for nondirection as to a lesser degree of homicide, was not dependent upon any objection or exception below. The principle of the decision is that an accused should not suffer prejudice through error or inadvertence of the court, though his counsel fail to call attention to it.

Territory v. O'Donnell, 4 N. M. (Gild.) 196. 12 P. 743, 749, cites the Yarberry Case, supra; cites Laws 1882, c. 4, § 5, supra; holds this section applicable to criminal cases; and lays it down that a failure to except to the giving or refusal of instructions is fatal to review. This case is not in point to the present inquiry. We mention it since it may be considered as the leading case in a long line of decisions, and since it seems to approve the Yarberry Case rather than the Nichols Case. It is to be noted, however, that the court did examine the instructions and considered that they "presented the case fairly to the jury." It is only with respect to such a case that it was laid down that, "If defendant was not satisfied with those [the instructions given] and desired any particular point presented to the jury prominently, he should

have offered a proper instruction covering that point." Perhaps in later cases too much reliance has been placed on the O'Donnell Case. Its doctrine was reaffirmed in U. S. v. De Amador, 6 N. M. 173, 27 P. 488, and in Trujillo v. Territory, 7 N. M. 43, 32 P. 154.

We now come to two decisions directly in point. Territory v. Friday, 8 N. M. 204, 42 P. 62, and Aguilar v. Territory, 8 N. M. 496, 46 P. 342. Each of these defendants, convicted of murder in the first degree, obtained a new trial because of failure to submit second degree. In these cases it was expressly held that counsel's failure to request submission of the lesser offense was utterly immaterial. The doctrine of the Nichols Case was followed, and no notice was taken of any conflicting or modifying statute or decision.

The Nichols, Friday, and Aguilar Cases have never been expressly overruled. The broad doctrine that an accused must not be prejudiced by his counsel's apparent acquiescence in error, if ever intended as applicable to other than the most serious errors, has clearly given way to later decisions. The authority of those cases extends no farther than to cases of homicide, and to the failure to submit a degree thereof. Even in that field inroads have been made.

In Territory v. Archuleta, 16 N. M. 219, 114 P. 285, it seems to have been doubted whether an omission to submit manslaughter should be reviewed in the absence of objection or request.

In Territory v. Torres, 16 N. M. 615, 121 P. 27, it was held that an omission to submit involuntary manslaughter could not be reviewed in the absence of a request. The authorities cited were Territory v. Caldwell, 14 N. M. 535, 98 P. 167, which involved omission to instruct as to the law of impeachment of witnesses, and Territory v. Watson, 12 N. M. 419, 78 P. 504, which involved failure to instruct as to self defense. The latter case placed reliance on the O'Donnell Case, supra.

In State v. Orfanakis, 22 N. M. 107, 159 P. 674, 677, it was held that an instruction that there "was no evidence in the case as to involuntary manslaughter," not excepted to, could not be reviewed.

State v. Kile, 29 N. M. 55, 218 P. 347, 352, is not here in point, but states as the rule: "That all degrees of unlawful homicide which are supported by the evidence, must, *upon proper request*, be submitted. * * *"

We have not attempted to review or cite all cases. We have considered all that have been brought to our attention by counsel as well as many others.

It was our former conclusion that the Nichols, Friday, and Aguilar decisions, though not expressly overruled, must yield to a contrary rule which has grown up in disregard of them. Most of our decisions take one view or the other, without attempting to harmonize the two. None suggests a distinction between a failure to submit a degree of homicide and a failure to submit some other important feature of the case, such as the law of self-defense. We were not impressed with the wisdom of recognizing such a distinction.

On further consideration, we conclude otherwise. As the result of former decisions, the matter stands thus on authority: Ordinarily, instructions given are the law of the case, and cannot be complained of unless the accused objected to those given, or requested others. This applies to a failure to submit involuntary manslaughter. But, the erroneous failure to submit second degree murder or voluntary manslaughter will require a new trial, even though the accused has not objected in any way to the omission. While this result may not be entirely logical, it is not entirely without reasonable support, and it spares us the necessity of overruling former decisions.

In the first place, we consider what the accused has at stake; the forfeiture of his life if convicted of murder in the first degree, or the probable total forfeiture of his liberty if convicted in the second degree. In view of these possible consequences, it is not unreasonable to hold the trial court to a more unerring discharge of duty and to be more indulgent to the accused. Somewhat in line with such a policy is State v. Granado, 17 N. M. 542, 131 P. 497. In that case no brief was filed for the appellant, but this court, as did the territorial court in Territory v. Guillen, 11 N. M. 194, 66 P. 527, conceived it to be its duty, because it was a capital case, to search the record for error which might have been prejudicial. That case lends some approval to the contention that, in such a case, the court must, at its peril, submit all degrees of criminality within the evidence. In reversing a decision of the territorial Supreme Court,

the United States Circuit Court of Appeals, speaking through Judge Sanborn, said: "But in criminal cases where the life, or as in this case the liberty, of the defendant for the probable remainder of his natural life is at stake the courts of the United States in the exercise of its sound discretion may notice grave errors in the trial of a defendant although the questions they present were not properly raised in the trial court by request, objection, or exception." Pettine v. Territory of New Mexico (C. C. A.) 201 F. 489, 497.

In the second place, in a case where instructions in the lesser degrees of criminality are appropriate, a failure to give them is very serious. It leaves the jury without proper definition and explanation of the elements or essentials of the crime charged. The common knowledge of the intelligent jury may serve fairly as to presumption of innocence, self-defense, or circumstantial evidence. Only technical knowledge or exact instruction will enable them to distinguish between the degrees of murder, between murder and manslaughter, or in a case like this, between manslaughter and self-defense. In fact, it is difficult to define first degree murder without distinguishing it from the second degree. Under the instructions in this case the jury may easily have mistaken the latter for the former.

In U. S. v. Cook, 15 N. M. 124, 103 P. 305, this court took the view that in a prosecution for adultery an entirely incorrect definition of the crime would not constitute reversible error unless timely objection were made. In

State v. Chaves, 19 N. M. 325, 142 P. 922, Ann. Cas. 1917B, 127, we held that under indictment for assault with a deadly weapon, failure to submit the included offense of simple assault could not be considered for want of a request for such submission. For a somewhat similar holding, see Territory v. Gonzales, 14 N. M. 31, 89 P. 250. It does not follow, however, that the same rule must be applied as to the lesser offenses included within the charge of first degree murder.

Finally, there is this distinction: The accused, demanding instructions as to presumption of innocence or self-defense, for instance, but invokes legal principles and facts favoring, or at least not inconsistent with, his plea of not guilty. It is not to embarrass him, or to demand too much, to require him then to assert his right or be deemed to have waived it. To require him to demand submission of a particular degree of homicide is different. That is to require him to point out to the court legal principles and facts upon which the jury may convict him, though his position is that he is guilty of no offense.

No one of these considerations controls our present decision. None of them can be followed in all its implications and logical results. Together they have persuaded us to decide this case according to the authorities as we find them, rather than to attempt to harmonize the law by overruling any of them.

We thus put no additional duty or responsibility upon the trial judge. They were already his in full measure. We merely add to the responsibility of this court and relax somewhat the duty of the accused and the responsibility of his counsel where life and total liberty are at stake.

Laws 1907, c. 57, § 37, was re-enacted in the 1917 Appellate Procedure Act (chapter 43, § 37), but was finally repealed in 1927 (c. 93, § 11). With a slight variation it now appears as a rule of court: "None but jurisdictional questions shall be first raised in the Supreme Court. Formal exceptions shall not be required in any case; but to preserve the question for review, it must appear that a ruling or decision by the trial court was fairly invoked." N. M. Appellate Procedure rule 12, § 1.

Counsel urge large consequences from this repeal. Whatever may have been the former effect of this provision, in modifying 1929 Comp. St. § 70-102, they say, it is now removed, since a mere court rule may "not conflict with any laws in force in this state." N. M. App. Proc. rule I. In this situation, they contend in effect that the duty of this court extends to the review of all instructions in criminal cases to discover whether the trial court has fallen into error by way of nondirection, regardless of the apparent acquiescence of the accused in the instructions as given.

Such a holding would upset all previous decisions and throw the law into confusion. It would not be pursuant to the deliberate mandate of the Legislature, since the reason for the repeal, well known to the bar, did not include any such purpose.

While we have set forth the course of this

repealed legislation, and this court has frequently seemed to rely on it, we cannot but doubt that it has really changed the course of decision. Indeed, we do not quite understand now how the conclusion was arrived at that it was applicable to criminal cases at all. The general principles of preserving and reviewing error are too strong and essential to have yielded entirely to such a statute as section 70-102. We see no good reason to interpret it as freeing an accused of the ordinary duty of making timely claim of his rights, or as demanding of this court a review of questions not decided below. It is said that such interpretation nullifies the statute. We think not, recalling that it imposes an absolute duty on the trial judge. True, the Legislature has said that "a failure * * * so to do shall be sufficient ground for a reversal of the judgment. * * *" That, we take it, is to authorize this court to review the instructions according to general principles—not to direct us to reverse for any and all omissions.

The line of demarkation between the legislative and the judicial power in the matter of procedure is not clearly defined. Certain powers are necessarily inherent in the courts. We do not say that the Legislature could not by clear and positive direction impose upon this court the unwise and impractical task which counsel would apparently have us assume. Certainly we shall not accept it through any liberality of construction. State v. McKnight (rehearing), 21 N. M. 44, 153 P. 76, 84. Lynch v. Grayson, 7 N. M. 26, 32 P. 149.

We conclude, therefore, that the question is no different now under the court rule than formerly under the statute.

We find no merit in appellant's plea of former jeopardy. It was upon his own motion that the first jury was discharged. State v. Woo Dak San, 35 N. M. 105, 290 P. 322.

Other errors claimed require no consideration.

The judgment is reversed. The cause will be remanded with a direction to grant appellant a new trial.

It is so ordered.

BICKLEY, C. J., and SADLER and HUDSPETH, JJ., concur.