456 P.2d 216

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Jerry LUNN, Defendant-Appellant.**

**No. 259.**

Court of Appeals of New Mexico.

June 6, 1969.

**384**

William C. Marchiondo, Joseph D. Beaty, McAtee, Marchiondo & Michael, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Ray Shollenbarger, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge.

Defendant was indicted for murder and attempted murder in the first degree. Upon trial by jury, he was convicted of murder in the second degree, in the killing of one Nick Candelaria, and of attempted murder in the second degree, in the shooting of Mrs. Candelaria. Defendant appeals from the judgment of conviction entered pursuant to the jury verdicts.

One point is determinative of this appeal and requires a reversal and remand for a new trial.

Defendant was acquainted with Mr. and Mrs. Candelaria, and had been particularly friendly with Mrs. Candelaria. Both she and defendant were employed by Mountain States Telephone Company at the main office in Albuquerque. An illicit love affair developed between them. On the evening of November 11, 1966, they had differences, and he struck her at least once in the face with his hand.

After November 11, 1966, it appears their relationship was far less intimate. However, they did see each other occasionally.

On the evening of April 6, 1967, a dinner party was being given by the Telephone Company at a place called the Red Lion Inn. Defendant had planned to attend and did attend this party. Mrs. Candelaria did not attend, but she knew defendant was planning to attend.

According to her testimony, defendant came to the back door of the Candelaria home at about 1:30 a. m. on April 7. She and her husband were awakened by what sounded like muffled knocks at the back door. Mr. Candelaria got out of bed, went to the door, and admitted defendant. The three of them remained in the kitchen talking and she began preparing coffee.

She testified that after defendant had been there about twelve minutes they heard a "thump." Mr. Candelaria asked defendant, who was sitting at or near the table, if he had dropped his shoe. They bent over to look under the table, and defendant came up with a gun in his hand. Very shortly thereafter defendant shot and killed Mr. Candelaria and shot Mrs. Candelaria through the left hand and abdomen. He then left by the back door.

She stated she heard defendant leave and immediately called the police by telephone. She advised the police of the shootings and asked for an ambulance. When asked if she knew who had done the shooting, she gave defendant's name and described the pickup truck in which he was riding. She did not see the pickup truck that morning, but she was acquainted with

it and she said she heard defendant and her husband talk about it.

Defendant also had a new Chevrolet automobile with which she was acquainted. She also knew he had a new western suit and a dark suit. In her testimony she referred to his dark suit as the one he was wearing at the time of the shooting.

Defendant had gone to the party in his pickup and had worn his dark suit. However, he claims he recalls nothing from a time shortly after the party, when he entered the bar at the Red Lion Inn, until he was awakened by the police in his bed at home. He did testify on cross-examination, when being questioned about the alleged shooting by him of Mrs. Candelaria, that he did not believe he had shot her, and that he believes he would remember if he had done so.

Liquor was being served at the party. He and another person were the last to leave. The evidence is that he drank all but about two ounces of a full quart of Vodka between about 7:00 p. m., when he arrived at the party, and shortly before midnight, when the party ended.

He went from the party room to the bar at the Red Lion Inn. Witnesses at the bar testified he left there about 1:15 to 1:30 a. m. and he was drunk at that time.

The distance between the Red Lion Inn and his home, by the most direct route, is about thirteen miles, and it takes about twenty-six minutes to drive it, by complying with the speed laws.

The distance between the Red Lion Inn and the Candelaria home by the fastest route is about 8.5 miles, and it takes about seventeen minutes to drive this route, by complying with the speed laws.

The distance between the Candelaria home and defendant's home by the shortest route is about 6.5 miles, and it takes about nineteen minutes to drive this, by complying with the speed laws.

Mrs. Lunn testified that defendant arrived at their home at 2:00 a. m. and immediately went to bed. As already stated, Mrs. Candelaria testified that defendant was at the Candelaria home at 1:30 a. m., and remained there about fifteen minutes.

Mrs. Candelaria is the only one who identified defendant as the person who shot her and her husband. Part of her identification of him related to the pickup truck he was driving and the suit he was wearing. However, as indicated above, she knew him well enough, and, according to her testimony, he was at their home long enough prior to the shooting for her to make a positive identification of him, independently of the vehicle and the suit of clothes.

Nevertheless, we are of the opinion that he was entitled to have presented to the jury all properly admissible evidence upon the credibility of Mrs. Candelaria and the question of her identification of him as the person who did the shooting. We are influenced in arriving at this opinion by the following: (1) his claim that he has no recollection of being at the Candelaria home at the time of the shooting; (2) his testimony that he believes he would recall the shooting, if he had done it; (3) the question raised by the evidence and reasonable inferences therefrom as to his whereabouts at the time of the shooting; (4) these and other evidentiary matters in the case which we feel, coupled with the excluded testimony to which we hereinafter refer, might reasonably raise doubts in the minds of jurors as to whether or not he did the shooting.

In his opening statement to the jury, the Assistant District Attorney stated that the evidence would show that Mrs. Candelaria had telephoned defendant on April 6, prior to the party. Although she did not intend to go to the party and did not go, she testified she talked to defendant on the telephone on either April 5 or April 6, and she thought it was on April 6. She says they talked about the party and other things. She also claims he said, "I have to be with you the way I have always been or not at all," and "The only way I can is we'll be the way we were or bitter enemies, * * *" She denies having asked him

whether he was going to drive his pickup or his automobile, and does not remember whether they discussed what he was going to wear to the party.

Defendant testified that he and a Mr. Balock, who was working for defendant on April 6, were in defendant's home having a cup of coffee when Mrs. Candelaria called. They talked about the party, and she asked if he was going to wear his new western suit. He answered that he was not and explained why. She then asked if he was going to take his new car. He told her he was not and explained why. She then asked if he was going to take the pickup, and he said he was.

Mr. Balock was called as a witness by defendant and testified he was helping defendant build corrals at defendant's home on April 6. He and defendant were having a cup of coffee at about 3:00 p. m. when defendant received a telephone call. He heard defendant's end of the conversation, but did not know to whom defendant was talking. When he was asked to relate what he had heard, the state objected on the ground that the foundation was insufficient, unless he knew "* * * who was on the other end of the line." The court sustained the objection.

Defendant then made a tender of proof in the absence of the jury. Mr. Balock testified he heard defendant say, among other things, that defendant was not going to take his car, but was going to take his pickup, and that he was going to wear his black suit and not his western suit.

On cross-examination he testified he was sitting nearby and heard all defendant said, and that defendant did not say anything about "if we can't be like we were before, we'll be bitter enemies."

The trial court adhered to its prior ruling. The jury was not permitted to hear this testimony of Mr. Balock because he did not know to whom defendant was talking.

Defendant contends he was prejudiced by the trial court's action in refusing to admit the testimony of Mr. Balock because it was corroborative of his testimony regarding the telephone conversation, because it tended to impeach her testimony as to the contents of the conversation, and because she knew from the conversation the vehicle he would be driving and the suit he would be wearing that night. Thus, she had knowledge from which she could have correctly testified as to the vehicle he was driving and the suit he was wearing without having seen him that night. We agree.

The fact that Mr. Balock did not know to whom defendant was talking did not make inadmissible his testimony as to what he had heard defendant say. The occurrence of the conversation had already been referred to in the opening statement of the Assistant District Attorney, and established by the testimony of Mrs. Candelaria, and the testimony of defendant. Mr. Balock was present and heard all that was said by defendant, and was qualified to testify concerning the utterances made by defendant in the course of this conversation. United States v. Bucur, 194 F.2d 297 (7th Cir. 1952); Takahashi v. Hecht Co., 60 App. D.C. 176, 64 F.2d 710 (1933); State v. Reznik, 3 Conn.Cir. 48, 207 A.2d 77 (1964); Jamaica Pond Garage v. Woodside Motor Livery, 236 Mass. 541, 128 N.E. 881 (1920); McCarthy v. Peach, 186 Mass. 67, 70 N.E. 1029 (1904); II Wigmore, Evidence, § 669 at 790 (3d Ed.1940). See also Nuttall v. Reading Company, 235 F.2d 546 (3d Cir. 1956); Atlantic Coast Realty Co. v. Robertson's Ex'r, 135 Va. 247, 116 S.E. 476 (1923).

We are unable to say with any certainty what effect Mr. Balock's testimony might have had upon the jury's appraisal of the credibility of either Mrs. Candelaria or defendant, but there is no doubt it tended to confirm defendant's version and to discredit her version of what was discussed. Also, there is no doubt that this testimony from an independent witness does have the effect of casting doubt upon her testimony as to what happened. At least it tends to

deprive her story of whatever strength may have been added to it by reference to the vehicle and the suit and his claimed implied threat that they would be bitter enemies, unless their former relationship were resumed.

We are unable, in the light of all the circumstances, to say the exclusion of this evidence was harmless. Compare Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953); State v. Chesher, 22 N.M. 319, 161 P. 1108 (1916); State v. Gray, 79 N.M. 424, 444 P.2d 609 (Ct. App.1968); Carter v. State, 376 P.2d 351 (Okl.Cr.1962); Wells v. State, 374 S.W.2d 449 (Tex.Cr.App.1963).

The judgment of conviction is reversed and the cause remanded with directions to grant defendant a new trial.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.