ROGER DEAN MOSBY *v.* STATE OF ARKANSAS

5788                                489 S.W. 2d 799

Opinion delivered February 5, 1973

*Walker, Kaplan & Mays,* by: *A. T. Goodloe,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Gene O'Daniel,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. This felony-murder case has been before us on two previous occasions, both times resulting in reversals. *Mosby and Williamson* v. *State,* 246 Ark. 963, 440 S.W. 2d 230 (1969); *Mosby* v. *State,* 249 Ark. 17, 457 S.W. 2d 836 (1970). The case was tried another time but resulted in a mistrial. Mosby now appeals from a conviction at the fourth trial and advances eight points for reversal.

Robert E. Lovelace, a taxicab driver in Little Rock, disappeared on the night of June 3, 1968. A week later the cab and his body were found in Grant County. It was the theory of the State that appellant participated in the robbery of Lovelace in which the latter was killed. Additional facts may be gleaned from the cited opinions.

Point I. *Appellant was denied a transcript of the proceedings which resulted in a mistrial.* The same

question was before the Supreme Court in *Britt* v. *North Carolina,* 404 U.S. 226, 92 S. Ct. 431, 30 L. Ed. 2d 400 (1971). In the first place there was no showing by appellant here that the transcript was needed to prepare his defense for a new trial. Nor was it shown that the reporter's notes of the mistrial could not have been read back if and when they were needed. Our position on this point is in harmony with *Britt*. Additionally it should be pointed out that appellant had access to the two previous trial transcripts.

Point II. *The trial jury did not represent a cross-section of the community.* On motion of appellant the prospective jurors chosen for the jury wheel were quashed, whereupon the trial court proceeded in accordance with Ark. Stat. Ann. § 39-214 (Supp. 1971). Three commissioners were appointed, one black and two whites, and they selected a new panel of sixty names. The testimony shedding light on this point consisted of the evidence given by the jury commissioners and the voir dire examination of thirty-one members of the jury panel. Appellant infers that three jury commissioners are not competent to choose a jury panel representing a cross-section of the community. We do not agree with that assertion. From the testimony of the commissioners we are impressed by their apparent acquaintance with citizens in many walks of life. In fact the testimony of the thirty-one members of the panel who were questioned on voir dire reflects broad strata of economic levels and occupations. The black member of the jury commission said he named approximately fifteen persons to the panel. Four blacks were among the thirty-one jurors questioned before a jury of twelve was obtained. We find no information concerning the total number of registered black persons in Grant County. There is nothing in the record concerning the ages, occupations, and stations in life of those twenty-nine members of the panel whose names were not drawn. The commissioners were not certain whether any eighteen-year-old electors were chosen but they did use the new voter registration list. We should also point out that Grant County is one of the most sparsely populated in the State. The burden was on appellant to show failure to draft a panel representing a cross-section of the county and he did not meet that burden. *Avery* v. *Georgia,* 345 U.S. 559 (1953). See *Point-*

*er* v. *State*, 248 Ark. 710, 454 S.W. 2d 91 (1970).

Point III. *Four murder trials constitutes cruel and unusual punishment.* We are cited no authorities for that proposition and we know of none.

Point IV. *The felony-murder rule should be changed.* Appellant is referring to that provision in the statute which makes murder perpetrated while in the commission of certain other felonies, murder in the first degree. Ark. Stat. Ann. § 41-2205. That statute has been a part of our law since 1838 and we have no intention of overruling it.

Point V. *The confession introduced was not voluntarily given nor was it a correct statement of what appellant said.* The allegation is contrary to the testimony of officer Tudor. The officer testified that he fully advised appellant of his rights. In fact appellant testified he told officer Tudor that appellant knew his rights. Appellant testified that no force was used on him. Officer Tudor said he made extensive notes of appellant's statements and reduced them to writing and that the writing truly reflected appellant's voluntary narration.

Point VI. *The State's witness indicated that a co-defendant confessed to the crime, stating that appellant committed the murder.* We do not so interpret the testimony cited to support the point. This question was propounded to officer Tudor by appellant's counsel on cross-examination and the following answer given:

Q. Isn't it true this is the statement you got from Mr. Williamson and you pieced it together to place it against Mr. Mosby.

A. No, sir. Their accounts are not the same and I listened to Mr. Mosby's statement and I recorded my impression of it and that is what I have given you today.

Point VII. *Exhibits cannot be introduced based on cross-examination of a witness.* The sheriff of Grant County stated on cross-examination that he found a

microphone in a tree. The State then took the witness on re-direct and introduced the microphone. We simply fail to perceive any error.

Point VIII. *A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied by other proof that such an offense was committed.* We agree with that statement of law, it being incorporated in our statutes. Ark. Stat. Ann. § 43-2115 (Repl. 1964). We think the evidence in this case abundantly meets that test. *Moore* v. *State*, 227 Ark. 544, 299 S.W. 2d 838 (1957). Lovelace was missing from home for a week. His body was found in a desolate place. His car was commandeered. A search of the premises produced the victim's empty wallet. A piece of the victim's jump suit had been cut from his body and the cloth contained human blood stains. The microphone on the two-way radio had been cut and removed. One of Lovelace's hands had been severed from the body. An identification card was found and his wedding ring was still on the finger bone. As in *Moore* there was ample evidence that Lovelace had been robbed and had not died a natural death.

Affirmed.

BYRD, J., not participating