537 P.2d 672

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Jerry LUNN, Defendant-Appellant.**

No. 1511.

Court of Appeals of New Mexico.
April 30, 1975.

Rehearing denied May 29, 1975.

Certiorari Denied June 26, 1975.

Mary C. Walters, Marchiondo & Berry, P.A., Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Santa Fe, James L. Brandenburg, David R. Lee, Marcia H. Summers, Sp. Asst. Attys. Gen., for plaintiff-appellee.

## OPINION

HERNANDEZ, Judge.

This matter has been before this Court on two previous occasions. State v. Lunn, 80 N.M. 383, 456 P.2d 216 (Ct.App.1969); State v. Lunn, 82 N.M. 526, 484 P.2d 368

(Ct.App.1971). In all, the defendant has been tried four times. The second trial resulted in a hung jury. The trial out of which this appeal arises resulted in defendant's conviction of murder in the second degree. Defendant presently comes before us alleging six points of error. We affirm.

Since the facts developed in this trial do not differ markedly from those developed in the first, we refer the reader to State v. Lunn, 80 N.M. 383, 456 P.2d 216, supra, for a statement of the facts.

### ▉ POINT I:

"DEFENDANT WAS ENTITLED TO INSTRUCTIONS ON THE DEFENSE OF INTOXICATION AS AFFECTING THE REQUISITE ELEMENTS OF SECOND DEGREE MURDER, AND AS AFFECTING A REDUCTION IN THE CHARGES AGAINST DEFENDANT."

This identical point was raised and answered negatively by our Supreme Court in State v. Tapia, 81 N.M. 274, 466 P.2d 551 (1970). In the *Tapia* case, the defendant maintained that since it was necessary for the State to prove beyond a reasonable doubt that the killing had been done unlawfully, willfully, feloniously, with premeditation and with malice aforethought, the jury had to find that a specific intent to unlawfully take a human life had been deliberately formed by defendant before he acted. Thus, the defendant in *Tapia* urged that "voluntary intoxication, of a degree which would prevent formation of a specific intent to kill, should have an effect in law of reducing the offense from second degree murder to voluntary manslaughter." In the insant case, defendant contends that because of his acute intoxication, he was unable to knowingly and willfully commit the act alleged and that the instructions he tendered on the charges of voluntary and involuntary manslaughter and on the question of his ability to harbor the requisite specific intent were improperly denied.

In *Tapia*, supra, the Supreme Court held as follows:

"Appellant recognizes that for him to prevail on this point it is necessary that the court reconsider State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966), where we stated unequivocally that 'voluntary intoxication is no defense to murder in the second degree,' * * *." [Citations Omitted.]

&ast; &ast; &ast; &ast; &ast; &ast;

"Appellant's argument necessarily turns on his view that a specific intent to kill is an element of the crime of murder in the second degree at least under the instructions given by the court in this case. The law of New Mexico, however, is clear that no specific intent to kill is required for a conviction for second degree murder."

▉ We hold that the trial court did not err in refusing the requested instructions in the present case because intoxication is not a mitigating factor in the current state of our law. Apart from evidence of intoxication, there is no proof in the record that defendant was otherwise entitled to an instruction on manslaughter.

### POINT II:

"THE TESTIMONY OF THE FBI AGENTS INJECTED A FALSE ISSUE INTO THE CASE, WAS IRRELEVANT AND UNCONNECTED TO ANY ISSUE, AND WAS INADMISSIBLE."

▉ The testimony of which defendant complains was given by agents Zimmer and Gallagher. Two slugs, one removed from the body of the deceased and one taken from the wall behind a television set in the deceased's home, together with four cartridges taken from a cartridge belt found in the defendant's den, were sent to the FBI laboratory in Washington, D. C. Agent Zimmer testified that the slugs and the cartridges were of the same type: copper-coated "Western .38 specials". On

cross-examination he acknowledged that this was a very popular size and that the number in distribution could be in the millions. He further testified that a .38 caliber cartridge could not have been fired from the .22 caliber pistol found in the defendant's home. Agent Gallagher testified that the two slugs were composed in the same way and that they were of the same composition as three of the four cartridges taken from defendant's cartridge belt. He said that they could have come from the same batch. Gallagher further testified that there could be a difference in composition of ammunition made by the same manufacturer. Two holsters were found at defendant's home but only one weapon, and it was a .22 caliber pistol. The murder weapon was never found. It was shown that the fatal bullet could not have been fired by defendant's .22 caliber pistol.

On this point, we believe that the agents' testimony was relevant in that it tended to connect defendant with the murder. State v. Thurman, 84 N.M. 5, 498 P.2d 697 (Ct. App.1972). This evidence, albeit inconclusive, was admissible.

Even though Rule 401 of the Rules of Evidence, § 20–4–401, N.M.S.A.1953 (Repl. Vol. 4, Supp.1973), had not yet become effective *at the time of trial* in the instant case, we note it, nonetheless, for its clear statement of the appropriate considerations involved:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*POINT III:*

"THE COURT IMPROPERLY REFUSED DEFENDANT'S TENDER OF EXPERT TESTIMONY AS TO THE AFFECT OF ACUTE INTOXICATION ON THE DEFENDANT'S CAPACITY TO FORM ANY INTENT TO COMMIT MURDER IN THE SECOND DEGREE."

The testimony referred to was that of Dr. John A. Salazar, a clinical psychologist. Based on testimony in the record that defendant had drunk two or three ounces less than a quart of vodka in a 5¼ hour period of time, Dr. Salazar would have testified that the defendant was acutely intoxicated and therefore incapable of deliberation, premeditation or malice aforethought.

Defendant's point is without merit. As was pointed out in State v. Tapia, supra:

> "We would agree with the appellant's contention that in crimes where a specific intent is a necessary element, a showing of intoxication to a degree that would make such an intent impossible, would establish a valid defense to the charge. [Citations omitted.] But, as noted above, a specific intent is not required for conviction in second degree murder, thus explaining why voluntary intoxication is no defense to such a charge." [Citations omitted.]

The evidence tendered, then, was properly excluded because it would not have been probative of any fact material to a determination of guilt on the charge of second degree murder.

*POINT IV:*

"THE TRIAL COURT SHOULD HAVE EXCLUDED TESTIMONY FROM THE TWO MINOR CHILDREN OF THE DECEASED, AS WELL AS EVIDENCE CONCERNING THE CONDITION OF DEFENDANT'S PICK–UP TRUCK."

The evidence concerning defendant's truck consisted of the testimony of two police officers. Officer Golden testified that when he examined the truck at 2:10 a. m., it was "extremely warm", indicating that it had been recently driven. Former Officer Montoya testified that when he examined the cab of the truck at approximately 2:00 a. m., he discovered vomit on the floor board on the drivers side. The widow of the victim testified that during the conversation that occurred

in the kitchen just before the shooting, defendant said that he had vomited and had gotten some of it on the lapel of his coat. She said she gave the defendant a damp cloth and that he used it to clean his lapel. The trial court did not err in refusing to exclude this testimony. The evidence showed that the defendant arrived at the Candelaria home about 1:30 a. m., left about 1:45 or 1:50 a. m., and that the police arrived at defendant's home at about 2:10 a. m. Officer Golden's testimony was relevant in that it tended to corroborate the prosecution's reconstruction of the time sequence involved. Officer Montoya's testimony was relevant in that it tended to corroborate testimony of the victim's widow regarding the presence of the defendant at the Candelaria house on the night in question. State v. Thurman, supra; State v. Wright, 84 N.M. 3, 498 P.2d 695 (Ct. App.1972).

The two sons of the deceased were 7 and 11 years of age, respectively, at the time of the shooting. Neither of them had testified at any·of the three prior trials.

In his brief-in-chief, defendant states that he:

"* * * objected to allowing their [the boys'] testimony upon grounds that the State had indicated on each of the three prior occasions that neither of the children remembered anything; that six years had intervened between the occurrence of their father's death and the trial at which they were called to testify; during which time their mother had married a man with whom she had been keeping company during the prior trials, with the opportunity of prompting the children in their testimony too prevalent to permit its introduction into evidence."

■ The objection raised, when properly viewed, challenges the credibility of these witnesses, not their competency. The question of their competency was for the trial court to determine. State v. Manlove, 79 N.M. 189, 441 P.2d 229 (Ct.App.1968). The question of their credibility was for the jury. State v. Romero, 34 N.M. 494, 285 P. 497 (1930). The defendant had ample opportunity on cross-examination to question their credibility. The trial court did not err in allowing them to testify.

*POINT V:*

"PROSECUTION OF DEFENDANT FOR THE FOURTH TIME WAS A DISCRIMINATORY, UNCONSTITUTIONAL DENIAL OF EQUAL PROTECTION OF THE LAWS, AND WAS CONDUCTED IN AN IMPROPER MANNER."

■ Defendant points out that since 1949 only one other defendant has been tried three times for the same offense in the Second Judicial District and that the defendant herein, "* * * was treated differently than any other defendant had been treated in at least twenty-four years." He goes on to conclude that this not only denies him equal protection of the law, but it also constitutes cruel and unusual punishment. We do not agree.

■ As we stated in State v. Sharp, 79 N.M. 498, 445 P.2d 101 (Ct.App.1968), "The 'equal protection of the law' provisions of the United States and New Mexico Constitutions do not require uniform enforcement of the law and do not protect defendant from the consequences of his crime." [Citations omitted.] To support his contention that the fourth prosecution here constitutes "cruel and unusual punishment", defendant cites Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). *Furman* involved three different defendants in three different prosecutions. The death penalty had been imposed on one of the defendants for murder, and on the two others for rape. The applicable statutes in each case, left the decision of whether to impose a capital penalty or a lesser punishment to the discretion of the judge or the jury, as the case might be. In his concurrence to the *per curiam* decision declaring such statutes unconstitu-

tional, Justice Douglas noted the following as a basis for decision:

> "It would seem to be incontestable that the death penalty inflicted on one defendant is 'unusual' if it discriminates against him by reason of his race, religion, wealth, social position, or class,˙or if it is imposed under a procedure that gives room for the play of such prejudices.

> \* \* \* \* \* \*

> "The words 'cruel and unusual' certainly include penalties that are barbaric. But the words, at least when read in the light of the English proscription against selective and irregular use of penalties, suggest that it is 'cruel and unusual' to apply the death penalty—or any other penalty—selectively to minorities whose numbers are few, who are outcasts of society, and who are unpopular, but whom society is willing to see suffer though it would not countenance general application of the same penalty across the board. \* \* \*" [Footnote omitted.]

As can be seen, *Furman* affords the defendant no support on the facts before us. A similar argument was urged upon the Supreme Court of Arkansas in an identical factual situation. In rejecting the argument, as do we, the Court said the following: "Point III. 'Four murder trials constitute cruel and unusual punishment.' We are cited no authorities for that proposition and we know of none." Mosby v. State, 253 Ark. 904, 489 S.W.2d 799, 801 (1973).

*POINT VI:*

"DEFENDANT WAS ENTITLED TO A CHANGE OF VENUE."

 Underlying defendant's argument on this point is a challenge to the trial court's view of the interrelationship between §§ 21–5–3 and 21–5–4, N.M.S.A.1953 (Repl.Vol. 4). Shortly after it became apparent that defendant would be reprosecuted, his counsel moved for change of venue pursuant to § 21–5–3(A)(2)(c), supra. The section reads:

> "A. The venue in all civil and criminal cases shall be changed, upon motion, to some county free from exception: \* \* \*. (2) when the party moving for a change files in the case an affidavit of himself, his agent or attorney, that he believes he cannot obtain a fair trial in the county in which the case is pending because: \* \* \* (c) because [sic] of public excitement or local prejudice in the county in regard to the case or the questions involved therein, an impartial jury cannot be obtained in the county to try the case; \* \* \*."

The terms of the section are mandatory and require a change of venue when the prescribed steps have been taken. In the present case, counsel's affidavit reads in pertinent part:

> " \* \* \* 3. That affiant believes the defendant Jerry Lunn cannot obtain a fair trial in Bernalillo County because (a) each trial has been attendant with publicity via radio, TV, and newspaper articles; (b) each appeal has been publicized and the results thereof, (c) that by virtue of the publicity that the defendant will be unable to recieve an impartial jury. \* \* \*"

The motion and affidavit were filed on May 26, 1971. Hearing on the motion was held September 3rd, 1971. At the hearing, the trial court announced that it would require presentation of evidence on the motion; and, thus, the question was removed from the mandatory operation of § 21–5–3, supra, to the discretionary operation of § 21–5–4, supra, as follows:

> "Upon filing of a motion for change of venue, the court may require evidence in support thereof, and upon hearing thereon shall make findings and either grant or overrule said motion."

See State v. Atwood, 83 N.M. 416, 492 P. 2d 1279 (Ct.App.1971); State v. Montoya, 80 N.M. 64, 451 P.2d 557 (Ct.App.1968). Pursuant to the trial court's demand, defendant proceeded to introduce evidence from his own investigator to the effect

that the name and prosecution of Jerry Lunn obtained a greater degree of notoriety among residents of the northern counties than the southern counties, that from the date of his initial arrest to the date of the hearing, the Albuquerque Journal had published 33 news articles on the case, and that during the same period, the Albuquerque Tribune had published 34 such stories. Further, defendant produced representatives from two of the Albuquerque television stations and one radio station, each of whom described the area of their broadcasting coverage and acknowledged that numerous reports on the Lunn case had been aired by their stations from time to time during the course of the three previous trials and two appeals. The District Attorney cross-examined the defendant's witnesses and called one of his own. Upon termination of the hearing, the trial court took the motion under advisement.

Defendant thereafter submitted requested findings and conclusions on January 31, 1972. On October 24, 1972, the trial court entered an order denying the Motion for Change of Venue. The order held, *inter alia:*

"* * * 2. That the Findings of Fact heretofore entered by the Court are the Findings of Fact and Conclusions of Law herein."

The problem raised by defendant on appeal is that there never had been made any findings or conclusions, reference back to which was possible.

 The thrust of defendant's argument may be divided into two parts. First, he urges that the trial court committed error in requiring any evidence on the motion beyond the affidavit executed by his attorney; and that but for that error, change of venue should have been granted as a matter of right. State v. Alaniz, 55 N.M. 312, 232 P.2d 982 (1951). Compare, State v. Deats, 80 N.M. 77, 451 P.2d 981 (1969). In this contention, we believe appellant is mistaken because it is for the trial court to determine whether the motion

should be granted or whether further evidence on the motion should be required. Section 21–5–4, supra. See State v. Fernandez, 56 N.M. 689, 248 P.2d 679 (1952). Second, defendant urges that since no findings were ever made on the motion, as required by § 21–5–4, supra, the hearing was a nullity and that the motion should have been considered as if no hearing were ever held. Such treatment would entitle the defendant to a mandatory change of venue under § 21–5–3, supra. In our opinion, two facts apparent on the record dispose of this contention: (a) defendant never brought the oversight implicit from the order to the attention of the trial court, and (b) defendant exercised no challenge to any of the jurors ultimately empanelled. The only juror excused from service on defendant's case was dismissed for cause by the court. Otherwise, none of the jury panel indicated knowledge, predisposition or prejudice after probing *voir dire* by the court, the prosecution and defense counsel. Thus, although we by no means intend to indicate approval of the trial court's failure to make findings in connection with defendant's venue motion, we believe that in this case such error as there was has been waived and that defendant has not met the burden of proof in showing that the error was anything more than harmless.

The judgment and sentence heretofore entered in this case are affirmed.

It is so ordered.

LOPEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

The reason this case found its way to this Court for the third time is made clear by reason of its prior judicial history.

In State v. Lunn, 80 N.M. 383, 456 P.2d 216 (Ct.App.1969), this Court reversed solely on the ground that the trial court did not permit testimony of defendant's witness as to a telephone conversation which was relevant to the credibility of the

eyewitness to the shooting. The other eight points raised by defendant were not considered.

In State v. Lunn, 82 N.M. 526, 484 P.2d 368 (Ct.App.1971), this Court reversed solely on the ground that defendant was denied his right of confrontation when the trial court allowed the admission of out of court statements by the victim's children. The other eight points raised by defendant were not considered.

In this case, six points are raised for review.

Experience on the bench has taught me that judges are, like all men, "liable to error; and * * * are, in most points, by passion or interest, under temptation to it." [John Locke, Essay Concerning Human Understanding (1690), dedicatory epistle]. Through all of defendant's prosecutions, certain errors have been perpetrated, and overlooked on appeal. These errors confront this Court in the instant appeal; and they should cause reversal of appellant's conviction for a third time.

A. *Manslaughter is an offense necessarily included in the charge of murder.*

Defendant was charged with murder in the first degree in violation of § 40A–2–1(A), N.M.S.A.1953 (2nd Repl.Vol. 6, 1972). However, the jury was not instructed on murder in the first degree. Defendant was convicted of second degree murder.

The court instructed the jury:

You are not to concern yourself as to whether or not the acts of the defendant may constitute some other crime other than that *for which he stands charged*, keeping in mind that your determination *is confined to the crime described*, and you shall not convict the defendant of this crime solely because you feel that he may be guilty of *some other crime*. [Emphasis added]

The trial court denied several of defendant's requested instructions on manslaughter. Two of them are:

If, however, you fail to find any one of the necessary elements to establish second degree murder, you may then consider whether or not the defendant is guilty of manslaughter.

\* \* \* \* \* \*

Manslaughter is the unlawful killing of a human being without malice. Manslaughter may be of two degrees:

A. Voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion.

B. Involuntary manslaughter consists of manslaughter committed in the commission of an unlawful act not amounting to a felony; or in the commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection. [Section 40A–2–3]

The Supreme Court and this Court have held many times that manslaughter is included in the charge of murder. State v. Rose, 79 N.M. 277, 442 P.2d 589 (1968), cert. denied, 393 U.S. 1028, 89 S.Ct. 626, 21 L.Ed.2d 571 (1969); State v. Holden, 85 N.M. 397, 512 P.2d 970 (Ct.App.1973).

Rule 44(d) of the Rules of Criminal Procedure [§ 41–23–44(d), N.M.S.A.1953 (2d Repl.Vol. 6, 1973 Supp.)] provides:

(d) *Conviction of lesser offense. If so instructed*, the jury may find the defendant guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein. [Emphasis added]

What is meant by the words, "If so instructed"? They have not been interpreted. Section 41–23–41(a) provides:

The court must instruct the jury upon all questions of law necessary for guidance in returning a verdict.

"Under Rule 41(a), the necessity of guidance to the jury is a mandatory duty of the trial court to avoid guess and speculation in returning a verdict." State v. Mata, 86 N.M. 548, 552, 525 P.2d 908, 912 (Ct.App.1974) (Sutin, J., dissenting).

"[Rule 41(a)] operates only when there is a complete failure to instruct upon a necessary issue." State v. Cardona, 86 N.

M. 373, 374, 524 P.2d 989, 990 (Ct.App. 1974).

Accordingly, the clause "If so instructed", in Rule 44(d), appears to require that when it is mandatory for the trial court to instruct on lesser offenses, and the trial court does so instruct, "the jury may find the defendant guilty of an offense necessarily included in the offense charged * * *."

Defendant was entitled to instructions on manslaughter if there was some evidence tending to establish the lesser included offense. State v. Andrada, 82 N.M. 543, 484 P.2d 763 (Ct.App.1971); State v. Wingate, N.M.App., 534 P.2d 776, decided April 9, 1975).

In Territory v. Lynch, 18 N.M. 15, 35, 133 P. 405, 409 (1913), the Court said:

> It is needless to cite authority for the proposition that, where there is any evidence tending to show such a state of facts as may bring the homicide within the grade of manslaughter, defendant is entitled to an instruction on the law of manslaughter, and it is fatal error to refuse it.

This rule has become established law in New Mexico. State v. Ulibarri, 67 N.M. 336, 355 P.2d 275 (1960).

The facts of this case are set forth in State v. Lunn, 80 N.M. 383, 456 P.2d 216, supra. The facts include "evidence tending to show such a state of facts as may bring the homicide within the grade of manslaughter * * *."

One of the most forthright opinions dealing with a failure to instruct on manslaughter was delivered by Justice Watson in State v. Diaz, 36 N.M. 284, 13 P.2d 883 (1932). In that case, the information charged murder in the first degree. The failure to give an instruction on voluntary manslaughter, which was supported by the evidence, constituted reversible error, even though the accused did not request such an instruction. Why? The Court said:

> In the first place, we consider what the accused has at stake; the forfeiture of his life if convicted of murder in the first degree, or the probable total forfeiture of his liberty if convicted in the second degree. In view of these possible consequences, it is not unreasonable to hold the trial court to a more unerring discharge of duty and to be more indulgent to the accused. 36 N.M. at 291, 13 P.2d at 887.

The basic reason for this conclusion in the instant case grows out of its history. In the second trial the jury was deadlocked. In the third trial the jury said "We recommend the defendant to the clemency of the court." In the fourth trial, during deliberations there were some votes of "not guilty". I am convinced by the tenor of the juries that, if given the opportunity, the juries would have found defendant guilty of manslaughter, the lesser included offense.

B. *Inquiry into numerical division of the jury during their deliberation is reversible error.*

While the jury was deliberating, the court inquired of the foreman of the jury:

> The Court: My information as to where you are on time. I don't want an indication as to how you are split and do not tell me or indicate in any way which way. Do you follow me? Just—I just want the count. I don't want you to indicate which way it is for. I should ask, when was your last vote?
>
> Mr. Hoffman: I would say about 5:30.
>
> The Court: O.K. Mr. Hoffman. Can you give a number tally?
>
> Mr. Hoffman: I would like to preface, there were three different kinds of votes, guilty, not guilty and undecided were the kinds of votes that were given out.
>
> The Court: Let me ask you, are you somewhere like six to six, is that near?
>
> Mr. Hoffman: No, we are kind of lopsided in one direction, kind of.
>
> The Court: I expect you're getting hungry after your cold lunch at 1:30.

Inquiry, as above, into numerical division of the jury during their deliberation is reversible error. Pirch v. Firestone Tire & Rubber Co., 80 N.M. 323, 455 P.2d 189 (Ct.App.1969); State v. Romero, 86 N.M. 674, 526 P.2d 816 (Ct.App.1974) (Sutin, J., dissenting).

In 1972, the Supreme Court adopted the Rules of Criminal Procedure. Section 41–23–43 is the only rule applicable after retirement of the jury. The only authority granted the trial court is to give the jury additional instructions or to correct any erroneous instructions it has given them. To read into this rule the right of district judges to visit with the jury, even with good conscience, makes the rule into a merry-go-round upon which children ride and play.

In homicide cases, we are not involved with money or property where "harmless error" can be used as a crutch. We are involved with human life and liberty. And let it not be said that courts which favor this view encourage homicide. All that the court says is: Give the defendant a fair trial.

C. *Admission of testimony and exhibits is reversible error.*

I agree with defendant that the testimony of the F.B.I. agents and the admission of certain exhibits were inadmissible and reversible error. State v. Kidd, 24 N.M. 572, 175 P. 772 (1917); compare State v. Carrillo, 82 N.M. 257, 479 P.2d 537 (Ct. App.1970); State v. Beachum, 82 N.M. 204, 477 P.2d 1019 (Ct.App.1970); State v. Gray, 79 N.M. 424, 444 P.2d 609 (Ct.App. 1968).

To be admissible, real evidence must be relevant. Sections 20–4–402–403, Wharton's Criminal Evidence, § 635 (13th Ed. Torcia). If it is not relevant, its admission constitutes reversible error. United States v. Reid, 410 F.2d 1223 (7th Cir. 1969); Landsdown v. United States, 348 F.2d 405 (5th Cir. 1965); State v. Wynne, 353 Mo. 276, 182 S.W.2d 294 (1944); Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965).

"Error in the admission of evidence 'should not be declared harmless unless it is so without question.'" Wynne, supra, 182 S.W.2d at 300, quoting from State v. Richards, 334 Mo. 485, 494, 67 S.W.2d 58, 61 (1933).

Defendant is entitled to a new trial.

D. *If the Supreme Court grants a new trial, intoxication should be considered in reducing the crime charged to manslaughter.*

New Mexico has not yet contemplated adopting the California rule that intoxication may be considered by the jury in reducing a charge of second degree murder to manslaughter. People v. Waters, 266 Cal.App.2d 116, 71 Cal.Rptr. 863 (1968); People v. Conley, 64 Cal.2d 310, 49 Cal. Rptr. 815, 411 P.2d 911 (1966).

Manslaughter, like second degree murder, is not a specific intent crime. State v. Utter, 4 Wash.App. 137, 479 P.2d 946 (1971); State v. Mercer, 275 N.C. 108, 165 S.E.2d 328 (1969); 40 C.J.S. Homicide § 37. Therefore, voluntary intoxication is not a defense. State v. Tapia, 81 N.M. 274, 466 P.2d 551 (1970); State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966).

I am not concerned here with voluntary intoxication as a defense to second degree murder or manslaughter. I am concerned with allowing the jury to weigh its effect on defendant's mental capacity to determine whether he was unable to form the malice aforethought necessary for conviction of second degree murder. *Waters,* supra; *Conley,* supra.

The State presented evidence of defendant drinking vodka until midnight, shortly before the alleged crime was committed; and of defendant having drunk almost a quart before arriving at the home of the deceased. The defendant testified that he drank so much he remembered nothing from the time he left the bar. The trial court refused defendant's tender of expert testimony as to the effect of acute intoxication on defendant's capacity to commit murder in the second degree. The defend-

ant tendered several instructions on voluntary intoxication which were denied.

Where a defendant is convicted of second degree murder, it should be prejudicial error for the trial court not to have instructed the jury that voluntary manslaughter may be found to exist if the jury finds that defendant could not have harbored malice aforethought, because of the effects which acute intoxication had on his mental state.

Our Supreme Court should consider adopting this rule. It involves a question of substantial public interest because of the great number of homicides in which there is evidence of intoxication.

I respectfully dissent.